KRICINOVICH *v.* AMERICAN CAR & FOUNDRY CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—SURGI-
CAL OPERATION.

It was error for the Industrial Accident Board to deny
defendant's petition for relief from further payments to
an injured employee until he should submit to an opera-
tion, where the undisputed testimony of the physicians
showed that the operation was a minor one, involving
little danger and little suffering, and was not an experi-
ment.[1]

2. SAME—AGREEMENT FOR COMPENSATION—STATUTES.

An agreement for compensation to an injured employee,
signed only by himself and his attorney, and not filed
with the Industrial Accident Board, as required by section
5, pt. 3, Act No. 10, Extra Session 1912, was not binding
on the parties, and the board had a right to disregard it.

Certiorari to the Industrial Accident Board. Sub-
mitted May 18, 1916. (Docket No. 119.) Decided
September 26, 1916.

Peter Kricinovich presented his claim against the
American Car & Foundry Company for compensation
for a broken leg while in defendant's employ. De-
fendant petitioned for relief from further payments
unless claimant should submit to a minor surgical
operation. From an order denying the petition, de-
fendant brings certiorari. Reversed.

*Alexander & Cotter* (*G. A. Orth,* of counsel), for
appellant.

*Ira J. Pettiford,* for appellee.

[1]As to effect of refusal of injured workman to have operation
performed as bar to compensation under the workmen's com-
pensation act, see note in L. R. A. 1916A, 381.

KUHN, J. The claimant, while in the employ of the defendant, suffered a compound fracture of the right leg between the knee and ankle, as a result of which he was confined to the hospital from December 5, 1912, to April 25, 1913, and was operated on twice by Dr. Palmerlee, the defendant's surgeon. He was treated until August 25, 1913, when the physician reported him well and able to work. The bone was then firmly united, and the wound had entirely healed, but the claimant still complained of pain, of which there were no objective symptoms.

The medical expenses were all paid by the defendant, as well as compensation at the rate of $6.43 per week (half the average weekly wages) until September 27, 1913, when the company stopped payment. On November 11, 1913, an award was secured from the Industrial Accident Board relieving it from further payments. The claimant made claim upon the company for further compensation some time later, on account of inability to work, and the parties agreed on compensation at the rate of $4.28, or two-thirds the rate for total disability. This was paid from September 27, 1913, to July 17, 1915. The claimant then returned to work at a wage of 10 cents an hour, receiving in addition $3 a week as compensation. He worked only a week, and after five weeks the company discontinued payments altogether, and petitioned the Accident Board for relief from further payments until claimant should submit to an operation. The petition was denied, and the defendant was ordered to pay the claimant compensation at the rate of $6.43 a week up to September 16, 1915, less payments actually made up to that time, and to pay compensation from that date forward until the condition should change to one of partial disability, at the same rate, and during partial disability to pay one-half the difference between his earnings prior to the injury and his earnings dur-

ing the partial disability. A review of this award is now sought by a writ of certiorari. Counsel for appellant contend:

"(1) That the Industrial Accident Board erred in awarding claimant compensation from such time as the said claimant refused to comply with the demand made on him to submit to an operation such as is described in the evidence, and under the conditions that are presented in the record.

"(2) That the Industrial Accident Board erred in requiring the American Car & Foundry Company to pay compensation as for total disability from the 27th day of September, 1913."

In substance, the testimony is: The three physicians who testified, and who were witnesses for the defendant, agreed that the operations performed on the claimant were successful and the wound had healed perfectly. Thereafter there were no objective symptoms of pain, and the pain complained of by the claimant, if there were any, in their opinions could be caused only by the entanglement of a nerve filament in the scar or in the callous thrown out by the bone in the healing process. They all recommended what they termed a slight operation, to chisel out some of the callous and loosen up the tissue. As said by Dr. Charles Kennedy:

"There would be no assurance that after the operation that condition would not obtain [but] that is the only way to cure it. * * * No; it is not an experiment, because [in] the large majority of cases that cures the condition."

There was nothing in the claimant's physical condition or in the nature of the operation to make it dangerous to life or health. The "deputy commissioner," so-called, who was a member of the arbitration committee, advised it, but the claimant steadfastly re-

fused for the given reason that he was afraid they would cut off his leg. The claimant walked about considerably, and for considerable distances, though he complained that his leg pained and swelled up after a walk of 10 or 15 blocks. He said it was swollen when he was giving his testimony, but Dr. J. B. Kennedy examined it and stated that it was not swollen.

It is a reasonable and salutary rule that:

"If the operation is not attended with danger to life or health, or extraordinary suffering, and if, according to the best medical or surgical opinion, the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, then he must either submit to the operation or release his employers from the obligation to maintain him."

See *Donnelly* v. *Baird & Co.*, 45 Scottish Law Rep. 394, 1 B. W. C. C. 95; *Warncken* v. *Moreland & Son,* 100 Law Times, 12, 2 B. W. C. C. 350.

The rule was recognized by this court in *Jendrus* v. *Steel Products Co.*, 178 Mich. 265 (144 N. W. 563, L. R. A. 1916A, 381, Am. & Eng. Ann. Cas. 1915D, 476), where the cases are reviewed by Justice STONE. In that case the refusal to submit to an operation was held not to be unreasonable. But the facts in that case distinguish it from this one. *First,* it was a major operation of a serious nature; *second,* the claimant was unable to speak or understand English, and was unacquainted with his surroundings; *third,* he was suffering great pain when the operation was advised; *fourth,* he did submit finally to the operation, and that within 15 or 16 hours after it was first found necessary, though it was too late to save his life. Justice STONE refers to cases where the operation was nothing more than a "minor operation for a trifling injury," as "clearly distinguishable from the instant case, which involved a major operation of a serious nature."

The most that can be said in favor of the claimant is brought out by this colloquy between his counsel and Dr. Palmerlee:

"*Q.* There is no assurance after the operation you speak of, is there, that when it was healed over the same condition would [not] be present?
"*A.* That is true.
"*Q.* It might be the same condition?
"*A.* Might be the same."

Presumably there is no absolute certainty as to the results of any operation. The apparent confusion in the testimony of the three surgeons seems to grow out of a suspicion that the claimant was malingering. They could not see anything wrong with his leg, and "could not imagine what was wrong with him," but they were obliged to accept his statement as true, and recommended the only measure they knew of to cure the trouble. Since, according to the testimony of the surgeons, who were of unquestioned standing in their profession, little, if any, danger is involved in the operation, and little suffering, and their diagnosis is not disputed, and the operation, according to the testimony, is not an experiment, and the defendant stands ready to bear all the expense of the operation and treatment, and has acted at all times with extreme fairness and consideration for the claimant, it would seem that, if he were a reasonable person, he would submit to the operation. Disinterested parties were sufficiently impressed with the testimony to encourage the claimant to submit, and the only reason offered for not agreeing to the proposal is a groundless fear that he will lose his leg, and possibly his life. Before the defendant is to be charged, in law or morals, with the duty to compensate him, the claimant should first discharge the primary duty owing to himself and society to make use of every available and reasonable means to make himself whole. This, in our opinion,

he has not done, and the defendant seems to have dis-.charged the burden of proving that the claimant's refusal to submit to the operation to relieve him is unreasonable.

From this it follows that the Accident Board erred in awarding compensation after July 26, 1915, at which time the defendant filed its petition to stop compensation until the claimant should submit to the operation.

The Accident Board in its award disregarded the agreement entered into between the claimant and defendant on January 6, 1915, for the payment after September 27, 1913, of two-thirds the compensation for total disability, and ordered compensation paid in full from that date. It appears that the memorandum of this agreement, which was merely a statement by the claimant, signed by himself and his attorney, that such a payment would be just and equitable, was not filed with the board, as required by section 5, pt. 3, Act No. 10, Pub. Acts, Extra Session 1912 (2 Comp. Laws 1915, § 5458), which reads as follows:

"If the employer, or the insurance company carrying such risk, or commissioner of insurance, as the case may be, and the injured employee reach an agreement in regard to compensation under this act, a memorandum of such agreement shall be filed with the industrial accident board, and, if approved by it, shall be deemed final and binding upon the parties thereto. Such agreements shall be approved by said board only when the terms conform to the provisions of this act."

It was therefore not binding on the parties, and the board had a right to disregard it.

The order of the board denying the defendant's petition is reversed, and claimant should not be allowed compensation after July 26, 1915, until he submits to the operation.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.