SUN COAL CO. *v.* ANDY WILSON.*

(*Knoxville.* September Term, 1922.)

1. **MASTER AND SERVANT.** Compensation for hernia held not recoverable by employee declining to submit to operation.

Under Workmen's Compensation Act, section 25, employer was within his rights in demanding that claimant, suffering from hernia, submit to an operation, there being no evidence to show that he had a weak heart, or that the operation was dangerous, or that an operation would not likely remedy the injury, and the claimant was not entitled to recover compensation so long as he declined to submit to an operation. (*Post, p.* 119-128.)

Acts cited and construed: Acts 1919, ch. 123.

Cases cited and approved: Jendrus v. Detroit Steel Products Co., 178 Mich., 265; Poniatowski v. Stickley Bros. Co., 194 Mich., 294; Riley v. Mason Motor Co., 199 Mich., 233; Kricinovich v. American Car & Foundry Co., 192 Mich., 687; Donnelly v. William Baird & Co., 1 B. W. C. C., 95.

Cases cited and distinguished: O'Brien v. Albert A. Albrecht Co., 206 Mich., 101; Lesh v. Illinois Steel Co., 163 Wis., 124; Schiller v. B. & O. Railroad Co., 137 Md., 235; Newbaker v. N. Y. Susq. & W. R. R. Co., 38 N. J. Law Journ., 175; McNally v. Railroad Co., 87 N. J. L., 455; Feldman v. Bramstein, 87 N. J. L., 20; Strong v. Soken-Galamba Iron & Metal Co., 109 Kan., 117.

2. **MASTER AND SERVANT.** Injured employee held entitled to compensation until time of refusal to undergo operation.

Claimant under Workmen's Compensation Act was entitled to recover compensation from the date of the injury until the time he wrongfully refused to be operated upon. (*Post, p.* 128, 129.)

Error to the Circuit Court of Campbell County.—HON. XEN HICKS, Judge.

---

*On duty of an injured employee seeking compensation under the Workmen's Compensation Act to submit to an operation see notes in L. R. A., 1917D, 174; 6 A. L. R., 1260; 11 A. L. R., 230 and 18 A. L. R., 431.

SMITH, WORD & ANDERSON, for Sun Coal Co.

AGEE & PETERS, for Wilson.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This is a suit under the Workmen's Compensation Act (Acts 1919, chapter 123).

The claimant, Andy Wilson, while in the employ of the Sun Coal Company, to-wit, on October 28, 1920, received an injury which produced hernia.

The coal company proposed to pay all the necessary expenses of an operation and requested claimant to go to the hospital and have said operation, which he refused to do, and his failure to submit to said operation was set up as a defense to his right to recover.

The trial court was of the opinion that he did not have to submit to an operation, and rendered a judgment in favor of the claimant for $4.73 per week for three hundred weeks, and from said judgment the coal company has appealed to this court, and has assigned errors.

1. Did claimant's refusal to submit to an operation bar a recovery?

The pertinent parts of the Compensation Act (chapter 123, Acts of 1919) are as follows:

"Sec. 25. Be it further enacted, that during the thirty days after the notice required by section 23 of this act be given the employer or his agent, the employer shall furnish free of charge to the injured employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches and apparatus as may be reasonably required, and the injured employee shall accept the same; and

at the option of the employer he may furnish the same free of charge to the injured employee for such length of time after the expiration of the thirty days as the employer may elect, and the employee shall accept the same. Provided, however, that the total liability of the employer under this section shall not exceed one hundred dollars, and, provided further, that the pecuniary liability of the employer for such services rendered the employee shall be limited to such charges as prevail for similar treatment in the community where the injured employee resides. All cases of dispute as to the value of such services shall be determined by the tribunal having jurisdiction of the claim of the injured employee for compensation. . . . .

"The injured employee must submit himself to the examination by the employer's physician at all reasonable times if requested to do so by the employer, but the employee shall have the right to have his own physician present at such examination, in which case the employee shall be liable to such physician for his services. The employer shall pay for the services of the physician making the examination at the instance of the employer. And in case of dispute as to the injury, the court may, at the instance of either party or on its own motion, appoint a neutral physician of good standing and ability to make an examination of the injured person and report his findings to the court, the expense of which examination shall be borne equally by the parties. If the injured employee refuses to comply with any reasonable request for examination, or refuses to accept the medical service which the employer is required to furnish under the provisions of this act, his right to compensation shall be suspended and no compensation shall be due and payable while he continues such refusal."

The evidence shows that a party so injured can never do efficient work, and that the injury will likely become greater as time passes; that as a result of the injury the earning capacity of the claimant at present has been reduced one-third; that the only cure for hernia is a surgical operation; that it is not a serious operation attended with unusual danger or pain, and can be successfully performed under a local anæsthetic; that such an operation usually restores a man to his former earning capacity; that when handled by a skilled surgeon practically all such operations are successful; that the claimant is physically able to undergo the operation, and an operation was recommended by the several physicians who examined him.

Under these facts, we are of the opinion that the employer was within its right in demanding that claimant submit to the operation. Under the undisputed evidence, we are impressed with the idea that any reasonable man, under such circumstances, would have submitted to an operation.

Our Compensation Act is broad, and provides that the employer shall furnish medical and surgical treatment for thirty days following the service of notice, and that he may furnish same thereafter, which the employee must receive. This question has been before a number of courts, and the decided weight of authority supports the conclusions which we have reached.

In *O'Brien* v. *Albert A. Albrecht Co.*, 206 Mich., 101, 172 N. W., 601, 6 A. L. R., 1257, which was a hernia case, the court said:

"The physician of the company and the one of plaintiff's selection both advised an operation for the hernia. Such operation is not attended with danger to life or health,

and it appears to be undisputed that it affords the only reasonable prospect of restoration of plaintiff's capacity to labor at his trade, that of a carpenter. Without it he may be able to labor at such light occupation as the condition of his feet and ankles will permit, but he cannot do heavy lifting as his trade of carpenter requires. During all the time he has refused and still persists in his refusal to submit to the operation advised by his own physician as well as the one in the employ of defendant. Plaintiff is an intelligent man, and whether such refusal is due to a defect of moral courage or not we are unable to say. The board did not find that his refusal was due to any ignorance or misunderstanding on his part, and no such finding would be justified on this record. Under such circumstances, the case is clearly distinguishable from *Jendrus* v. *Detroit Steel Products Co.,* 178 Mich., 265, L. R. A., 1916A, 381, 144 N. W., 563, Ann. Cas., 1915D, 476, 4 N. C. C. A., 864; *Poniatowski* v. *Stickley Bros. Co.,* 194 Mich., 294, 160 N. W., 569, and *Riley* v. *Mason Motor Co.,* 199 Mich., 233, 165 N. W., 745.

"We appreciate the timidity with which the average person contemplates an operation, minor as well as major. But we also appreciate that in thousands of cases, operations, many of them of but minor degree, have restored incapacitated men to the army of wage-earners, and put them in position to discharge their duty to their dependents, themselves and to society. We are impressed that under the undisputed evidence in the case it was the plaintiff's duty to accept the tendered operation. His unequivocal refusal to follow the advise and judgment of both physicians with reference to the operation relieved defendants from further activities in that direction, and, for the

time being at least, absolved them from liability. As was said by this court, speaking through Mr. Justice KUHN in *Kricinovich* v. *American Car & Foundry Co.*, 192 Mich., 687, 159 N. W., 362: 'Before the defendant is to be charged, in law or morals, with the duty to compensate him, the claimant should first discharge the primary duty owing to himself and society to make use of every available and reasonable means to make himself whole.'

"In both this case and that of *Jendrus* v. *Detroit Steel Products Co.*, supra, this court quoted with approval the following language of Lord McLAREN in *Donnelly* v. *William Baird & Co.*, 1 B. W. C. C., 95: 'That if the operation is not attended with danger to life or health, or extraordinary suffering, and if according to the best medical or surgical opinion the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, then he must either submit to the operation or release his employers from the obligation to maintain him.'

"In the Jendrus Case Mr. Justice STONE fully considers this question. That was a case of a major operation of a very serious character. The workman was an ignorant foreigner, who refused for some time to consent to the operation, but who finally did consent. Under all the circumstances of that case it was held that the refusal to consent to the operation was not an unreasonable one.

"Applying then the rule announced by Lord McLaren and adopted by this court, to the facts of the instánt case, we are impressed that plaintiff's refusal was unreasonable. The operation was not as serious a one as in the Jendrus Case. Indeed, the record discloses that it was not a serious case of hernia. The operation is not attended

with danger to life or health, and could be performed by the use of either a general or local anæsthetic. The doctors agree that it is advisable, and it is not disputed that it is the only thing that can be done to effect a cure. Until the plaintiff submits to an operation, which should be at the expense of defendants, he is not entitled to compensation from them."

*Lesh* v. *Illinois Steel Co.,* 163 Wis., 124, 157 N. W., 539, L. R. A., 1916E, 105, was a case where the applicant received an injury to his leg in 1913, and was operated upon. Subsequent to the operation a nodule developed near the scar, involving a superficial nerve, and the medical treatment necessary for the applicant's relief consisted of a slight surgical operation to remove the nodule, which claimant declined to submit to. The court said:

"Where, as in this case, the applicant under the Workmen's Compensation Act unreasonably refuses to undergo a safe and simple surgical operation which is fairly certain to result in a removal of the disability, and is not attended with serious risk or pain, and is such as an ordinarily prudent and courageous person would submit to for his own benefit and comfort, no question of compensation being involved, the disability which the claimant suffers thereafter, a reasonable time being allowed for recovery, is not proximately caused by the accident, but is the direct result of such unreasonable refusal.

"No question of compelling the applicant to submit to an operation is involved. The question is: Shall society recompense a workman for a disability caused by his unreasonable refusal to adopt such means to effect a recovery as an ordinary prudent person would use under like circumstances and which would result in the removal of the disability within the rule as stated above?

"It is true that the compensation awarded under the terms of the act is not damages in the technical sense, and that the rules relating thereto are not to be applied in cases arising under this act; and cases have been cited simply for the purpose of showing that damages accruing as a direct result of the claimant's unreasonable refusal to submit to reasonable medical and surgical treatment, where the results are fairly certain, were not even in tort cases, held to be proximately caused by the accident.

"The proposition that an applicant, under the provisions of this humane law, may create, continue, or even increase his disability by willful, unreasonable and negligent conduct, claim compensation from his employer for his disability so caused, and thereby cast the burden of his wrongful act upon society in general, is not only utterly repugnant to all principles of law, but is abhorrent to that sense of justice common to all mankind."

*Schiller* v. *B. & O. Railroad Co.,* 137 Md., 235, 112 Atl., 272, was a hernia case. The court said: "It was vigorously contended by appellant that one should not, as a condition precedent to continuing compensation during disability, be required to submit to an operation, the result of which might be fatal, even if such result is so unlikely as to make the danger practically negligible.

"To support this contention he has cited but three authorities, all being New Jersey cases: *Newbaker* v. *N. Y. Susq. & W. R. R. Co.,* 38 N. J. Law Journ., 175; *McNally* v. *Railroad Co.,* 87 N. J. L., 455; *Feldman* v. *Bramstein,* 87 N. J. L., 20.

"The overwhelming weight of authority is opposed to this view, holding that a man cannot continue to receive compensation and at the same time refuse to submit to

proper medical or surgical treatment such as an ordinary reasonable man would submit to in like circumstances"— citing 10 or 11 cases.

*Strong* v. *Soken-Galamba Iron & Metal Co.,* 109 Kan., 117, 198 Pac., 182, 18 A. L. R., 415, is another hernia case, in which the court said:

"Why should the plaintiff permit an operation to be performed? It might not result in his improvement; it would be painful; it is remotely possible that it might result in his death. Many if not most of the ordinary activities of men are painful in a sense; the man who works hard all day until his muscles cry for rest, and the man who goes into the field when the temperature is from ninety to one hundred and five and works under the direct rays of the sun, endure sensations that are as unpleasant and many times are as unbearable as pain. They are pain, but of a kind different from that caused by wounded flesh.

"Danger to life is everywhere, at all times; it cannot be escaped by any one. The most trifling accident to the person or the smallest scratch on the skin may result in death. The locomotive engineer and his fireman, when they climb into the cab of their engine and start on their trip, constantly face dangers that may, and often do, result in their death; the miner who goes into the earth, to take therefrom ore or mineral, faces death every day. These men are not deterred by danger, although they know that injury or death is liable to come at any time. They go because that is their field of labor, and it is their duty to go.

"One of the greatest blessings that God has given to men is the ability to work, to work with hand and head and heart. Work produces happiness; refusal to work produces

misery. Whatever of happiness there is in the world is the result of hard work. Whatever has been attained by man has been done by hard work, and the greatest achievements have been produced by the greatest efforts. In art, literature, science, and in all industrial enterprises, the greatest achievements have been accomplished by the hardest labor. The last ounce of energy of which the person laboring was capable of putting forth has been what has produced the desired result. It is a man's duty to himself, to his family, to society, and to God—to work, to work hard, to work with all his might, to accomplish in his lifetime all that it is possible for him to accomplish, to keep his mind and body 'in such a condition as will enable him to do his best, and to avoid everything that will detract from any of his powers or prevent him from accomplishing his utmost. If misfortune overtakes him in any way, and that misfortune detracts from his ability and renders him less able to work, mentally or physically, and the effect of the misfortune can be removed, it is his duty to do the thing that will restore him, even if there is pain and danger. There is no law to compel a man to perform any of these duties, but nevertheless they exist.

"The State goes to great expense to fit its people for work, to protect them in their work, and to secure to them the result of their labor. Then if a man who receives these favors from the State will not work, he at least is not a good citizen.

"The plaintiff has been injured. The injury can be remedied, and he can be restored to his former condition. It is his duty to do whatever is necessary to restore him. If he refuses to perform that duty, he should not ask the State nor any person to assist him in that refusal. He can-

not be compelled to undergo an operation, but he can be told that if he refuses he shall not receive compensation for that which he voluntarily continues."

Under the facts of this case reason and common sense dictated that claimant submit to a surgical operation.

We do not wish to be understood as holding that, under all circumstances, a claimant should submit to an operation when so requested by the employer, but we have not a case here where the operation is serious or dangerous, or where the physicians disagree as to the advisibility of an operation.

Here it was the privilege of the claimant, if such were the facts, to show that he had a weak heart, or that the operation was dangerous, or that an operation would not likely remedy the injury. The undisputed evidence is to the contrary. We are of the opinion, therefore, that petitioner is not entitled to recover compensation so long as he declines to submit to an operation.

2. It was also insisted by the coal company that the claimant was not entitled to recover, for the reason that it appears from the evidence that he was enabled to earn as much subsequent to the injury as he was earning at the time of the injury. This contention is not supported by the evidence.

3. The method of computation resorted to by the trial court was acquiesced in by the claimant, and, under any theory of the case, was certainly no more than he was entitled to recover, if he were entitled to recover at all.

4. The injury occurred on October 28, 1920. The petition was filed on December 31, 1920. The answer was filed on January 27, 1921, setting forth as a defense claimant's refusal to submit to an operation. The evidence

Sun Coal Co. v. Wilson.

does not show the exact date when the request for an operation was made. Claimant is entitled to recover compensation from the date of the injury until the time he refused to be operated upon, which we will treat as of the date the answer was filed. The period between said two dates is thirteen weeks, which, at $4.73 per week, amounts to $61.49. The decree of the trial court will be reduced to this sum.

Each party will pay one-half of the costs accrued in the several courts.