CHARLES E. HAMMONDS, Petitioner-Appellee,

*v.*

RIO GRANDE FENCE COMPANY, Defendant-Appellant.

396 S.W.2d 347.

(*Knoxville,* September Term, 1965.)

Opinion filed November 17, 1965.

PRESTON H. TAYLOR, Kingsport, for appellee.

E. LYNN MINTER, Kingsport, for appellant.

MR. JUSTICE WHITE delivered the opinion of the Court.

In this workmen's compensation case the chancellor decreed benefits for temporary total disability from June 2, 1964 until October 20, 1964, and permanent partial disability to the extent of fifty per cent (50%) to the body as a whole, for two hundred (200) weeks, at the rate of $32.50 per week. The employee was also given judgment for the bills of Drs. Munal and Davis in the amount of $170.00.

A motion for a new trial being overruled, the employer has appealed and contends here:

(1) There is no evidence, competent or otherwise, to sustain the judgment of the court, and it was error for the court to make an award of compensation for temporary total disability and permanent partial disability to the body as a whole, or of any nature; and (2) it was error for the court not to sustain defendant's motion to suspend any rights that the petitioner may have had to recover compensation because petitioner had declined medical attention as proffered by the defendant.

The question of law presented by the appellant in its brief is:

Can a complainant under the workmen's compensation act refuse all medical treatment offered to him by his employer or his insurance carrier without having his compensation suspended?

The able chancellor set out in his findings that the employee received a compensable injury growing out of and in the course of his employment, and that he gave due notice of such injury to his employer. The court said that the employee alleges that

* * * while he was working at the Sevier Terrace, preparing to install or put up a fence, and while engaged in taking up some old steel posts which were embedded into the ground, that he took hold of one of the steel posts, and while pulling it toward him, the post snapped and petitioner was propelled or thrown backward eight or ten feet where he fell violently to the ground, on his back and his tailbone. It is the contention of the petitioner that he had a sharp pain in his stomach and that a hernia or rupture appeared suddenly, and he further alleges that he was injured in his back and his cervical vertebrae area, and that he received injuries to his body as a whole, and particularly a back injury.

The chancellor then held there was sufficient proof to sustain the averments of the petition.

T.C.A. sec. 50-1009 provides that all hernia or rupture, inguinal, femoral or otherwise, so proven to be the result of an injury by accident arising out of and in the course of employment, shall be treated in a surgical manner by a radical operation. It is further provided that in case the injured employee refuses to undergo the radical operation for the cure of said hernia or rupture, no compensation will be allowed during the period such refusal continues; if, however, it is shown that the employee has some chronic disease, or is otherwise in such physical condition that the court finds it unsafe for the employee to undergo said operation, the employee shall

be paid compensation in accordance with the provisions of said Code section.

There is no doubt in the record that the employee refused to submit to the repair of the hernia. The chancellor did not pass upon the reasonableness of this refusal, but we are required to do so. This test of reasonableness was first announced in the case of *Sun Coal Company v. Wilson,* 147 Tenn. 118, 245 S.W. 547 (1922), and in that case compensation was suspended when an employee refused to undergo a hernia operation. There was no indication in that case of his reasons for such refusal. In the instant case the employee refused and his reason was:

I wanted to get my back better, and another thing, I didn't want to leave my wife and my kid at home with nothing to eat and be in the hospital worrying over them. That wouldn't help me none.

The attending physician advised the employee to have a surgical repair of the hernia done and the first date of this advice, according to the doctor, was on the 17th day of June, 1964, the accident having occurred on June 2, 1964. Again, on the 25th day of June, 1964, the same advice was given to the employee.

The doctor says that on his last examination of the employee, he was still complaining of pain in the back area, also pain in the left leg and in the left hip, and pain in the left inguinal area. Physical examination, however, at that time still revealed the left inguinal hernia to be present, which was reducible, according to the doctor, and the remainder of the examination was negative.

The doctor described the hernia as being a weakness in the abdominal wall where a small area of bowel pro-

trudes; usually a small intestine protrudes through this weakness and the hernia is reducible through an operation, and unless the operation is performed strangulation can result necessitating emergency surgery. The doctor was asked:

Q. Now at the present time he has a simple hernia?

A. Yes, there were no complications.

Q. Is this boy physically able to undergo this operation for a hernia in your judgment?

A. Yes.

Q. And you advised it all along?

A. Yes, I have.

Q. Now, if he does have it repaired what would be your medical opinion as to results?

A. Well the repair of the hernia in a fellow Charles' age—he's young—results are nearly 100% of a good repair.

Q. It's not, you don't class it as a serious operation?

A. No, this is not a serious operation in that you don't go into the abdomen like you do with an appendectomy or gall bladder operation.

The doctor said further that in the event the operation was successful that he would advise this particular patient to stay away from work for six weeks and that the patient would be in the hospital approximately one week.

Dr. Davis said also that in his examination on the day before he testified in court, he found the cervical and the lumbar spine to be negative and that the main trouble of

the employee, from a physical standpoint, was the hernia in the left inguinal area.

Dr. Davis is the only man of medicine testifying in the case. Dr. H. R. Merrill, a chiropractor, testified but his testimony concerned the condition of the back. Therefore, the only medical evidence in the record of probative value is that of Dr. Davis, and he said that the hernia suffered by the employee is a simple one and could be corrected without danger to the life of the patient.

One of the last opinions written by Mr. Chief Justice Neil, prior to his retirement in February, 1960, involved the construction of T.C.A. sec. 50-1009 [*Sullivan v. Green,* 206 Tenn. 42, 331 S.W.2d 686 (1960)]. In that case he reviewed all of the authorities on the particular question and the Court, through him, said that the operation there concerned was for a rupture of the diaphragm or "diaphragmatic hernia." To repair this type of hernia would require an opening of the chest and the removal of a section of a rib or ribs.

The Court said that while the doctors did not describe the operation as dangerous, they spoke of it as being a very serious operation and the Court said:

The clear inference to be drawn from this undisputed evidence is that the risk attending it is substantial and far greater than an operation for the correction of an inguinal or femoral hernia.

As said in the Sullivan case, the question always is whether the refusal of the employee to be operated upon is reasonable, and quoting from 1 Larson, Workmen's Compensation Law sec. 13.22, the Court said:

"The difficulty arises when 'reasonableness' has to be defined. The judgment usually resolves itself into a

weighing of the probability of the operation's successfully reducing the disability by a significant amount, against the risk of the operation to the claimant. If the risk is unsubstantial and probability of cure high, refusal will result in a termination of benefits. But if there is a real risk involved, and particularly if there is a real chance that the operation will result in no improvement or even perhaps in a worsening of the condition, the claimant cannot be forced to run the risk at peril of losing his statutory compensation rights.'' 206 Tenn. at 55, 331 S.W.2d at 692.

█ The Court then held that the foregoing statement taken from Larson fairly represents the holding in the reported cases in Tennessee. Of course, we are confronted with the question of whether there is material evidence to sustain the trial judge, as we are in all of these cases, and as the Court was in the Sullivan case. However, in that case the Court said:

* * * where the trial judge has overlooked undisputed material evidence bearing upon the determinative issue, the finding of fact by the trial judge is inconclusive, and the same is true where the determinative, or material issue involves a mixed question of law and fact. 206 Tenn. at 57, 331 S.W.2d at 692, 693.

In *Sun Coal Company v. Wilson,* supra, the Court held that the operation was not ''attended with unusual danger or pain, and can be successfully performed under a local anesthetic.'' (147 Tenn. at 121, 245 S.W. at 547).

In the case at bar the only medical doctor testifying said that this hernia could be repaired under local anesthetic, but he preferred to use a general anesthetic.

In *Crane Enamelware Company v. Dotson,* 152 Tenn. 401, 405, 277 S.W. 902, 903 (1925), the Court held:

> When the conditions are such as those appearing in *Sun Coal Co. v. Wilson* * * * the employee would have to submit to an operation.

The Court observed that in these foregoing cases there was no appreciable risk involved.

In Dorland, American Illustrated Medical Dictionary, a hernia is defined as: "The protrusion of a loop or knuckle of an organ or tissue through an abnormal opening." An inguinal hernia is defined as: "A hernia into the inguinal canal."

It is common knowledge that this type of hernia can be repaired with little difficulty and as said by the attending physician: "The results are nearly 100% of a good repair."

To make the position of the physician clear, we quote some questions put to Dr. Davis, M.D., and his answers:

> Q. Now, to repair the hernia that he has at this time, Dr. Davis, is that done under local anesthesia or * * * what's the other I am trying to think of?
>
> A. General anesthesia.
>
> Q. Or general. May it be done under either?
>
> A. It can be done under either. If I were to do it, I would prefer to do it under general anesthesia.

■ We think the trial judge overlooked the substantial evidence of Dr. Davis, as the Court held in the Sullivan case. We think for the benefit of this young man, and for the proper application of the law to the undisputed facts

appearing herein, that this case should be remanded for further proceedings.

Temporary total disability should be allowed this employee up until August 26, 1964, at which time a letter was written to the employee offering the operation on behalf of the employer, and, further, he should be paid temporary total disability during the time that he remains in the hospital in connection with the repair of the hernia and for a reasonable time thereafter, according to the testimony of the surgeon doing the repair. After this operation has been accomplished, the matter should be submitted again to the chancellor for a determination as to the permanent disability of this employee, if any, growing out of this accident, bearing in mind, as the attending physician has testified, that the repair of a hernia is usually 100% successful.

We think the ends of justice require that this case be remanded for the purposes above indicated and if the employee refuses the operation, all payments of compensation to him will be suspended from and after August 26, 1964.

Remanded for further proceedings not inconsistent with this opinion.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.