CITY OF BRISTOL, Tennessee, Appellant,

*v.*

JOHN W. REED, Appellee,

402 S.W.2d 124.

(*Knoxville,* September Term, 1965.)

Opinion filed March 2, 1966.

Petition for Rehearing Denied April 22, 1966.

174

BEN C. DAVIS and EDWIN L. TREADWAY, Kingsport, HUNTER, SMITH, DAVIS, NORRIS & WADDEY, Kingsport, of counsel, for appellant.

DAVID S. HAYNES, Bristol, CURTIN, HAYNES & WINSTON, Bristol, of counsel, for appellee.

MR. JUSTICE WHITE delivered the opinion of the Court.

This is a workmen's compensation case brought in the Chancery Court involving unusual procedure and voluminous pleadings. The original petition was brought by the City of Bristol, employer of the appellee, John W. Reed. The petition averred, in substance, that a dispute existed between the parties involving a hernia injury which the employee claimed occurred on September 10, 1964. The petitioner neither admitted nor denied the injury, and stated that it may have been in error in compensating the employee for temporary total disability. It sought to bring the employee into court and have the claim, whatever it was, settled.

The employee answered, claiming that the September 10, 1964, injury was only an aggravation of a pre-existing condition, and, by amendment to the answer, he alleged a compensable injury occurring in August, 1963 (specifically August 16), the injury being bilateral femoral hernia. It was alleged that the September, 1964 injury merely aggravated the August, 1963 injury. It was also alleged that voluntary compensation payments were made through October, 1964. The answer then sought affirmative relief in the nature of further compensation payments for the August, 1963 injury. This amended answer was filed March 29, 1965; the original petition was filed February 12, 1965.

After a further amendment to the answer, not important here, petitioner City of Bristol filed a plea in abatement alleging, in substance, that it was improper for the employee-defendant to insert an additional cause of action, the injury of August 16, 1963, into the case by way of amended answer, and that any such cause of action was now barred by the statute of limitations.

The court reserved a ruling on the plea in abatement. A response to the amended answer was filed, alleging an offer of an operation to the employee Reed, and finally the cause was heard on evidence presented by both parties.

The facts essentially are these: The employee Reed, a garbage collector for the City, in May, 1963, sustained a left inguinal hernia, which was repaired successfully in an operation by Russell Fankhouser, M.D. On August 16, 1963, the employee Reed sustained an injury on the job which was diagnosed by Dr. Fankhouser as bilateral femoral hernia. An operation was suggested by Dr. Fank-

houser and was set for November 11, 1963, but Reed did not appear for it. Meanwhile the employer's insurance carrier issued drafts on November 8, 1963, and later on December 3, 1963, to pay doctor's and druggist's bills for the August injury. Employee Reed continued working, without loss of time from August 16, 1963, until September 10, 1964.

On September 10, 1964, while working for petitioner and lifting a heavy roller, defendant Reed experienced a burning and stinging pain in both sides and was again referred to Dr. Fankhouser who diagnosed the trouble as bilateral femoral hernia, the same as occurred on August 16, 1963. Drafts from the insurance carrier, referring specifically to an injury occurring September 10, 1964, were issued on October 23, 1964, for compensation in the amount of $123.42, on November 11, 1964, for a doctor's bill in the amount of $15.00, and on January 7, 1965, in the amount of $36.00 for compensation. The compensation payments covered loss of work periods from September 11 to September 17, 1964, and September 18 to October 11, 1964. The employee Reed has not worked since January 8, 1965.

Reed is 45 years of age, has little education, has a serious hearing defect, has seven children, and possesses no skill. His employment has always been that of a laborer. During the years 1963 and 1964, his average wages with petitioner ranged from $57.50 to $60.00 per week.

The chancellor decreed temporary total disability from January 11, 1965, and ordered compensation at the rate of $36.00 per week. He also ordered an operation to repair the employee's hernia, to be performed not later

than June 1, 1965, with the approval of Dr. Fankhouser. However, the employer-petitioner refused at that time to offer the operation, so the chancellor ordered permanent total disability payments of $36.00 per week beginning June 26, 1965. A motion for a new trial was overruled and the City has appealed to this Court.

It is first asserted as error that the chancellor improperly allowed the defendant-employee to insert into the case, by way of amended answer to the employer's petition, a new cause of action—the accident arising August 16, 1963. Appellant has cited no authority to support this claim of error. We have found none.

The employee's amended answer, though not specifically designated a crossbill, nevertheless set out matters calling for affirmative relief and includes a prayer directly for affirmative relief. Counter relief may properly be sought in an answer in Chancery. T.C.A. sec. 21-613. The counter action, as in any cross-bill, must, of course, be limited to matters growing out of the original bill or equitably connected therewith. Gibson's Suits in Chancery sec. 774 (5th ed. 1956). But equity also delights in giving complete relief and avoiding a multiplicity of suits and so should consider any pertinent claim for relief that is reasonably connected with the original bill. This is especially true in workmen's compensation. See T.C.A. sec. 50-918 which directs an equitable and liberal construction of the Act by the courts.

It is next asserted as error that there is nothing to support the chancellor's findings that voluntary medical and compensation payments, other than a doctor's bill paid November 8, 1963, and a druggist's bill paid December 3, 1963, were related to the injury of August 16, 1963.

The appellant asserts, to the contrary, that all payments, other than those in 1963, were made only for the injury occurring September 10, 1964. Thus, it is claimed, there were no voluntary payments after December 3, 1963, which would toll the one-year statute of limitations as to the August, 1963 injury. Appellant says the last voluntary payment for the August, 1963 injury was December 3, 1963, and the employee's answer in the nature of a cross action was brought much later than one year after December 3, 1963.

■■ The law as regards the totalling of the one-year statute of limitations for compensable injuries is that voluntary payments of compensation by the employer or his insurance carrier within one year of the injury toll the running of the statute. T.C.A. sec. 50-1003; *Adams v. Patterson,* 199 Tenn. 603, 288 S.W.2d 453 (1956). Voluntary payments of medical expenses also toll the running of the statute. *John Sevier Motor Co. v. Mullins,* 205 Tenn. 227, 326 S.W.2d 441 (1959); *Chandler v. Traveler's Insurance Co.,* 212 Tenn. 199, 369 S.W.2d 390 (1963).

Admittedly, the exhibits of the insurance carrier's drafts show that the payments of compensation on October 23, 1964, and January 7, 1965, and a doctor's bill on November 5, 1964, were all made pursuant to an injury which occurred September 10, 1964. However, the testimony of Dr. Fankhouser, the only physician to testify as to the alleged injury of September 10, 1964, was to the effect that no new injury occurred on this date, but merely an aggravation of the August 16, 1963 injury. On September 18, 1963, Dr. W. K. Vance, the employer's physician, informed the employer's insurance carrier that the injury of August 16, 1963, was a femoral hernia.

The attending physician's report to the employer also indicates this.

■■ As to the "injury" of September 10, 1964, the employer's physician, Dr. J. O. Marcy, referred the employee to Dr. Fankhouser, who confirmed in a letter to Dr. Marcy on September 15, 1964, that the only physical injury was the femoral hernia still present from the August, 1963 injury. We cannot say that this shows no evidence that the September 10, 1964 injury was simply an aggravation of the August 16, 1963 injury and that the employer or his insurance carrier, through their attending physician, did not know that the injury was simply an aggravation.

A pertinent part of Dr. Fankhouser's testimony confirmed by the collective Exhibit "A", is as follows:

A. The patient was next seen by me on August 19, '63.

Q. And at that time was he referred to you by a physician?

A. Dr. W. K. Vance.

Q. Did you examine him at that time?

A. Yes, sir.

Q. What did you find as a result of your examination at that time?

A. At that time the left inguinal scar was healed. There was no evidence of recurrence of the left inguinal hernia. There was no evidence of a right inguinal hernia. There was evidence of hernia which were femoral hernias on both the right and left side.

\* \* \* \* \* \*

Q. All right. When he referred this man to you in September of 1964, did you examine him at Dr. Marcy's request?

A. Yes, I did.

Q. What did you find at that time?

A. That physical situation in the inguinal regions was essentially the same as what I have already described. There was no evidence of recurrent hernia in the inguinal scar on the left side; there was no evidence of a right inguinal hernia. He still had the bilateral femoral hernias on both sides.

Q. Did he in fact described to you an occasion which caused him some pain in that area while on the job?

A. That's all he told me when I saw him at that time, which is indicated in my report to Dr. Marcy, and I may read from the first line of that report: "I have seen your patient Mr. John Reed. He complains of pain in the right inguinal region at this time." That report is dated September 15, '64.

Q. Now, from your examination did he have any new hernia that was different or new from that which you had already diagnosed back in August of 1963, when you saw him on September 1964?

A. No, I'd say the findings were essentially the same.

It is not the province of this Court to reweigh the evidence in workmen's compensation cases, but to determine whether there is material evidence to support a finding of fact by the trial judge. *Reedy v. Mid-State Baptist Hosp.,* 210 Tenn. 398, 359 S.W.2d 822 (1962); *Swift & Co. v. Howard,* 186 Tenn. 584, 212 S.W.2d 388 (1948).

*Hammonds v. Rio Grande Fence Company*, 217 Tenn. 190, 396 S.W.2d 347 (1965).

The next error alleged involves the refusal of the employee Reed to submit to an operation for the femoral hernia—the operation being scheduled for November, 1963, but having never taken place.

■ T.C.A. sec. 50-1004 prescribes that an employee must, at the risk of losing compensation, submit to reasonable and proper medical treatment, and the same must be "furnished" by the employer. T.C.A. sec. 50-1009 prescribes specifically that an employee with a hernia of the type in the instant case must submit to an operation or lose his compensation rights, unless it is unsafe to undergo such operation. Under either statute a "reasonable" refusal to undergo an operation will not result in the suspension of compensation payments. *Sun Coal Co. v. Wilson*, 147 Tenn. 118, 245 S.W. 547 (1922); *Sullivan v. Green*, 206 Tenn. 42, 331 S.W.2d 686 (1959); *Hammonds v. Rio Grande Fence Company*, supra.

■ While it is not stated in either statute that the employer must directly offer the operation to the employee, either verbally or in writing, it is reasonable to expect that the employee should be informed of the necessity for and/or offer of the operation, and, of course, it is required that the employer or his insurance carrier will furnish the cost of it. Clearly the employee here was informed that he should have an operation. Dr. Fankhouser so informed him. The employee claims he never received a letter from the insurance carrier of his employer, admonishing him to submit to the operation; but even if he did receive the letter (which is filed as part of collective Exhibit "A"), it is somewhat ambiguous

on this point and it is possible that the employee Reed, a man of limited intelligence, could not, as he so testified, understand definitely that he was being offered a free operation to correct his femoral hernia. Thus, there is evidence to support the chancellor's findings, viz.:

That due to a misunderstanding on Reed's part, as to the nature and consequence of an operation and as to who would pay for same, his failure to appear was not such as would justify denial of compensation benefits therefor.

There is evidence, in the testimony of Dr. Fankhouser, that an operation on the femoral hernia, while "it would restore him back to the state in which he did not have any hernias," it would not allow him to go back to lifting even as little as fifty pounds, which, of course, is more than likely commonplace in his type of work. The chancellor's finding that an operation would not have completely eliminated Reed's disability "but would have reduced his disabilty to 50% or less," was apparently based on this evidence and we can see no error in this statement. Dr. Schmidt's statement also supports this finding.

In spite of these findings, there was other evidence, from the doctors' testimony, that it would improve employee Reed's condition to undergo the operation, and the chancellor so ordered it. When the employer was then unwilling to offer the operation, the chancellor correctly ordered compensation payments. We cannot speculate as to what future action is warranted should the employer change its mind and offer the operation.

Finally, plaintiff in error claims that the chancellor was in error in requiring the employer to offer its proof prior to that of the employee. While one of the

employer's witnesses was put on the stand first, it is clear from the type of proof offered by the witnesses for the employee and the holding of the chancellor that this somewhat unusual order of proof nevertheless did not change the burden of proof in any way. There was no issue as to whether the alleged injury arose out of and in the course of employment. There was an issue as to when and whether a compensable injury occurred. The employee here, of course, had the burden of proof and there is nothing in the order of proof to indicate that this was shifted to the employer.

Many of the assignments herein are interrelated and dependent upon each other. We believe that we have disposed of all of the assignments by our aforesaid, and that the chancellor decided this case properly. His decree is affirmed and this cause is remanded to be proceeded with in accordance with the terms of said decree.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.

## On Petition to Rehear

In its petition to rehear, Appellant reiterates the argument already advanced before this Court that the employee should not have been allowed to inject into the case the issue regarding the injury of August 16, 1963. It is claimed that the only issue presented by the petition in the lower court was whether the employee sustained injuries by accident arising out of and in the course of his employment with his employer in September, 1964. We are convinced that the employee properly instituted his suit for the August, 1963 injury by way of an answer in the nature of a cross-bill. Appellant has presented no new argument and no new authorities on

this point. Also, it cannot be said that Appellant was inequitably denied its right to plead the statute of limitations because Appellee was allowed to institute a new action by way of cross-bill. Appellant did, in fact, plead the statute of limitations, and our opinion indicates that we find no difference, for the purposes of stopping the running of the statute of limitations, between the leading process in an ordinary lawsuit and an answer in the nature of a cross-petition.

Appellant next claims that the uncontradicted evidence shows that the employee sustained a non-compensable injury on September 10, 1964, and that its compensation payments made after September 10, 1964, were for that injury and that injury alone.

We have said nowhere in our opinion that the ''episode'' of September 10, 1964, was not an injury within the meaning of T.C.A. sec. 50-902. We do say that it was undisputed from the doctor's testimony that the September injury was an aggravation of an injury occurring on August 16, 1963. Whether within the meaning of T.C.A. sec. 50-902, this episode of September 10, 1964, is an injury or not, is not important here. We are concerned with the medical and compensation payments made after September 10, 1964, for the purpose of determining toward what physical infirmity they were made. If they were made toward a physical infirmity brought on by an injury occurring August 16, 1963, which injury was aggravated by an injury of September 10, 1964, they tolled the running of the statute of limitations for the August, 1963 injury, which had only begun to run, having before been tolled, from December 3, 1963. As we stated in our opinion, we think there was evidence to show that the employer knew it was making payments for an ag-

gravated injury and a condition which existed over a year prior to the September 10, 1964 accident.

Since the employer claims that the September 10, 1964 injury was not *compensable* within the meaning of T.C.A. sec. 50-1009, it is difficult to understand why payments were made for the September 10, 1964 "injury." It would not be within reason to infer that the employer was relying on its liability for the August 16, 1963 injury, knowing it was liable for the September 10, 1964 injury. Contrary to what the Appellant claims in its petition to rehear, we think these payments were not gratuitous, and even if they were erroneous, the error cannot erase the effect these payments had on the statute of limitations.

The petition to rehear is, therefore, denied.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.