FRED CANTRELL CO. *v.* B. F. GOOSIE.*

(*Knoxville.*   September Term, 1923.)

1. MASTER AND SERVANT. Findings of facts on evidence in compensation case final.

Where there is any material evidence to support the trial court's findings of fact as to an employee's disability, the judgment thereon must be affirmed.   (*Post, p.* 286.)

Case cited and approved:   Milne v. Sanders, 143 Tenn., 602.

3. MASTER AND SERVANT. Finding refusal of compensation claimpensation claimant's disregard of physicians' advice warranted.

A finding of the court in compensation proceedings that an employee's incapacity from a broken leg did not result from his willful misconduct and refusal to follow the advice of physicians *held* supported by evidence.   (*Post, pp.* 286-288.)

2. MASTER AND SERVANT. Finding Incapacity not due to comant to submit to operation was not unreasonable warranted.

A finding that refusal of an injured employee to submit to an operation to remove a disability growing out of a broken leg was not unreasonable so as to deprive him of further compensation under Public Acts 1919, chapter 123, section 25, *held* sustained by the evidence,   (*Post, pp.* 288-290.)

Acts cited and construed:   Acts 1919. sec. 25, ch. 123.

4. MASTER AND SERVANT. Refusal of compensation claimant to submit to operation involving risk of life not unreasonable.

Under Public Acts 1919, chapter 123, section 25, denying further compensation to an injured employee, who unreasonably refuses

---

*On refusal of injured workman to have operation performed as bar to compensation under Workmen's Compensation Acts, see note in L. R. A., 1916A, 387;   6 A. L. R., 1260 and 18 A. L. R., 431.

As to what constitutes serious and wilfull misconduct within the meaning of Workmen's Compensation Acts, see notes in L. R. A., 1916A, 75, 243, 355;   L. R. A., 1917D, 133 and 4 A. L. R., 127.

On right and extent of review of findings of commission under Workmen's Compensation Acts, see note in L. R. A., 1917D, 186.

Fred Cantrell Co. v. Goosie.

to submit to an operation, a refusal to submit to an operation which involves a risk of life is not unreasonable. (*Post, pp.* 290-292.

Cases cited and approved: McNally v. Hudson & M. R. R. Co., 87 N. J., Law, 455; Henly v. Oklahoma Union R. R. Co., 81 Okla., 224; Rothwell v. Davies, 19 Times Law Rep., 423; Tutton v. The Majestic, 2 K. B.. 45; Donovan v. N. O. R. & Light Co., 132 La., 239; McNamara v. Met. Street R. Co., 133 Mo. App., 645; Guild v. Portland R. Light & P. Co., 64 Or., 570; Jendrus v. Detroit Steel Products Co.. 178 Mich., 265; Donnelly v. William Baird Co., S. C., 536; Reabon Coal Co. v. Themas, 3 B. W. C. C. (Eng.). 32; Hay's Wharf v. Brown, 3 B. W. C. C., 84; Burgess & Co. v. Jewell, 4 B. W. C. C., 145; Shirt v. Calico Printers' Association, 2 K. B., 51; Sun Coal Co. v. Wilson, 147 Tenn., 188.

### FROM KNOX.

Appeal from the Circuit Court of Knox County—HON. VON A. HUFFAKER, Judge.

WM. BAXTER LEE and JAS. M. MEEK, for Fred Cantrell Co.

WEBB & BAKER and M. W. EGERTON, for Goosie.

MR. JUSTICE HALL delivered the opinion of the Court.

The petition in this cause was filed by Fred Cantrell Company in the circuit court of Knox county against the defendant, B. F. Goosie, seeking to be relieved of the payment of further compensation to Goosie under the Workmen's Compensation Act.

The material allegations of the petition are that petitioner and defendant, on and prior to September 15, 1920, occupied the relation of employer and employee, and were operating under the provisions of chapter 123 of

the Acts of 1919, known as the Workmen's Compensation Act; that on or about said date defendant sustained a personal injury by an accident arising out of and in the course of his employment with petitioner; that said injury consisted of a fracture of the femur of defendant's left leg;. that at the time of said injury defendant was receiving wages from petitioner at the rate of $21.60 per week; that immediately following the injury defendant was removed to a hospital in the city of Knoxville, Tenn., where he was examined and treated by competent physicians and surgeons; that defendant, throughout his. stay in the hospital, was a very unruly patient and constantly violated the instructions of the physicians who had charge of his case, and constantly demanded that he be permitted to return to his home, which was some three miles from the hospital; that the physicians attending him repeatedly advised defendant against leaving the hospital and warned him that if he did leave the hospital at that time serious results would follow; but notwithstanding this advice and warnings by his attending physicians, defendant left the hospital seven days following his injury and returned to his home; that if defendant had remained in the hospital and had obeyed the advice and instructions of his physicians, he would not have been disabled for a period of more than three months, and that a full and complete recovery would have been had within that time; that as a direct result of defendant's willful disobedience of the advice and instructions of his attending physicians, he is now suffering from a bad union of the fractured femur, and as a result thereof is incapacitated to perform the duties at which he had been engaged

Fred Cantrell Co. v. Goosie.

prior to and at the time of sustaining his injury; that this condition will be permanent unless remedied by a surgical operation, which could be performed with a reasonable expectation of success, and with only very slight danger to defendant; that petitioner had offered to defray the expenses of such an operation in an effort to correct defendant's condition, and had offered to pay to him compensation in accordance with the provisions of the Workmen's Compensation Act during his disability resulting from such operation, but defendant had declined to submit to such operation.

The petition further alleged that petitioner had been paying defendant compensation on the basis of total disability, but in view of the matters alleged in its said petition it was entitled to be relieved from the payment of further compensation, and this relief was accordingly prayed.

In due season defendant answered the petition and filed a cross-petition. In his answer he denied the allegations of the original petition upon which his employer sought to be relieved of the further payment of compensation to him, and prayed in his cross-petition that the original petitioner be ordered to make further payments to him for his injury in accordance with the provisions of the Workmen's Compensation Act, and that the compensation due him be commuted and paid to him in a lump sum.

The original petitioner answered the cross-petition of defendant, and denied its material allegations.

The case came on to be heard before the circuit judge on August 17, 1921, upon the pleadings and proof, when

a judgment was rendered dismissing the original petition, and the relief sought by the original petitioner was denied.

The circuit judge also dismissed defendant's cross-petition praying for a commutation of the compensation which remained due him from the original petitioner under the Workmen's Compensation Act, being of the opinion that the facts did not present a proper case for commutation.

The original petitioner, Fred Cantrell Company, was taxed with the costs of the case.

From this judgment Fred Cantrell Company has appealed to this court and has assigned errors.

Two questions are presented by the assignments of error:

First, was the condition from which the defendant was suffering at the time the original petition was filed due to his willful misconduct and his refusal to follow the advice and instructions of his physicians; and, second, can that condition be remedied by an operation, and is the refusal of defendant to undergo such an operation so unreasonable that the payment of further compensation to him by petitioner should be ordered stopped?

These are largely questions of fact, and if there is any material evidence to support the trial court's finding upon them the judgment must be affirmed. *Milne* v. *Sanders,* 143 Tenn., 602, 228 S. W., 702.

We need not go into a detailed discussion of the facts bearing upon the first question. The evidence shows that defendant sustained a fracture of the femur of his left leg by falling from a ladder while in the employ of petitioner, and in the course of his employment. He was immediately carried to a hospital in the city of Knoxville,

Fred Cantrell Co. v. Goosie.

Tenn., where the fracture was set by a physician and surgeon of the city of Knoxville, Dr. Jones. Two or three days after the fracture was set, it was discovered by Dr. Jones, through the use of a fluoroscope, that the ends of the broken bone were out of apposition. Defendant was again carried to the operating room and put under an anæthetic, and the fracture was again set by Dr. Jones with the assistance of Dr. Nash, who was also a physician and surgeon of the city of Knoxville, and the leg was placed in a plaster paris cast.

Some two or three days after the fracture had been last set, defendant left the hospital and returned to his home, being carried away from the hospital in an ambulance. It appears that he has a bad union of the fractured bone, and as a result of this he is unable to walk without the use of crutches.

Drs. Jones and Nash, his attending physicians and surgeons, who testified on behalf of petitioner, expressed the opinion that the bad union which defendant has was due to his leaving the hospital too soon. They say that defendant was an unruly patient while in the hospital and constantly insisted on being sent home. They say that defendant left the hospital over their advice and protest, and after he had been warned that if he did do so he would probably have a bad leg. These witnesses give it as their opinion that the parts of the fractured bone were pulled out of apposition while defendant was being removed from the hospital, or after he had returned to his home. There is other proof in the record, however, that the ends of the fractured bone could have been pulled out of apposition by the drawing and contraction of the

large hip muscles, and not necessarily by his removal from the hospital. So far as the evidence shows, defendant was removed from the hospital to his home in a careful manner and placed in bed; his leg being in a plaster paris cast and resting on a "Lane's plate."

One of his physicians, Dr. Jones, continued to see defendant after he was carried to his home for some time and never discovered any unusual condition in his leg. Both Drs. Jones and Nash testified that when the fractured parts were last set they were in perfect apposition, or as near so as they could be gotten.

On the question of defendant leaving the hospital over the advice of his attending physicians, and after he had been warned that if he did do so he would probably have a bad leg, the evidence is in conflict.

Defendant denies that he disobeyed the instructions of his physicians in any manner, or that he refused or failed to co-operate with them in the treatment of his leg. He admits that he asked to be sent to his home, to which he says his attending physicians consented, and that he left the hospital with their consent. He also says that he obeyed and carried out his physicians' instructions after he returned to his home, and that his present condition is not due to any refusal or failure on his part to obey their advice and instructions. In these statements defendant is corroborated by the testimony of other witnesses.

The circuit judge having found against petitioner on this controverted question of fact, his finding is conclusive.

Now, on the question of whether or not defendant has unreasonably refused to submit to an operation in an effort to have his present condition corrected: The circuit judge found that he did not, and we think there was

material evidence to support that finding. It appears from the evidence that the operation necessary to correct the present condition of defendant's leg would consist of an incision on the outside of the leg about eight or nine inches long to the bone and the stripping of the periosteum on either side and cutting the adhesions or striphine so as to warp the bone, making a traction on the leg by use of the Hawley's Table, pulling the leg down as far as necessary, and wiring the ends of the bones together and placing the leg in a splint or "Lane's plate." The evidence tends to show that this would be a major operation, and that such operations are attended with danger of infection and risk of life.

Dr. Nash, petitioner's witness, who is shown to be a physician and surgeon of wide experience, testified that defendant was not a good subject to operate on owing to his rundown physical condition, and that the danger of infection in his case would be from six to ten per cent. It further appears that in bone operations the danger of infection is greater than in almost any other operation. There was also evidence which tended to show that if the operation should be successful defendant would not have more than fifty per cent. of the normal use of his leg, and that it would be from six months to a year before defendant could use his leg sufficiently to perform any labor.

Dr. Miller, upon being asked what were the dangers of such an operation, replied:

"A. Well, you would have the danger of speticemia or infection. That infection might come from that operation. That is an infection of the skin, although we do everything we can to prevent that, but even with that greatest care it is present, or at least sometimes occurs,

148 Tenn.—19

and there is also a danger of infection through the blood channels.

"Q.  Is the danger more through the blood channels or through the skin?   A.   As I would view the operation, more through the blood channels."

Dr. Miller also testified that there was danger even after an operation of not getting a union of the fractured bones.

All of the physicians who testified stated that there was more or less danger of infection from such an operation; some of them estimating the danger as low as 3 or 4 per cent.

The language of our statute is as follows:

"If the injured employee refuses to comply with any reasonable request for examination, or refuses to accept the medical service which the employer is required to furnish under the provisions of this act, his right to compensation shall be suspended and no compensation shall be due and payable while he continues such refusal."  Section 25 of chapter 123, Acts of 1919.

It has been repeatedly held that the refusal of an employee to submit to an operation cannot be said to be unreasonable when it appears that a risk of life is involved. *McNally* v. *Hudson & M. R. R. Co.*, 87 N. J. Law, 455, 95 Atl., 122; *Henly* v. *Oklahoma Union R. R. Co.*, 81 Okla., 224, 197 Pac., 488, 18 A. L. R., 427; *Rothwell* v. *Davies*, 19 Times Law Rep. (Eng.), 423; *Tutton* v. *The Majestic* (1909), 2 K. B., 45; *Donovan* v. *New Orleans R. & Light Co.*, 132 La., 239, 61 South., 216, 48 L. R. A. (N. S.), 109; *McNamara* v. *Metropolitan Street R. Co.*, 133 Mo. App., 645, 114 S. W., 50; *Guild* v. *Portland R. Light & P. Co.*, 64 Or., 570, 131 Pac., 310; *Jendrus* v. *Detroit Steel Prod-*

*ucts Co.,* 178 Mich., 265, 144 N. W., 563, L. R. A., 1916A, 381, Ann. Cas., 1915D, 476.

Under the English acts the cases generally hold that a workman will be denied compensation where he unreasonably refuses to undergo an operation of a minor character which would, in the opinion of medical men, restore his earning capacity. *Donnelly* v. *William Baird Co.,* S. C. (Scot.), 536. Also under these acts it is generally held to be a question of fact whether or not the employee's refusal to undergo an operation is unreasonable. *Reabon Coal Co.* v. *Thomas* (1909), 3 B. W. C. C. (Eng.), 32; *Hay's Wharf* v. *Brown* (1909), 3 B. W. C. C. (Eng.), 84; *Burgess & Co.* v. *Jewell* (1911), 4 B. W. C. C. (Eng.), 145; *Shirt* v. *Calico Printers' Association* (1909), 2 K. B. (Eng.), 51.

We think a reasonable construction should be given to our statute. We do not think it should be required that the injured employee should submit to a serious operation involving an appreciable risk of life in order that the pecuniary obligation created by law in his favor against his employer may be minimized. This rule appears to be supported by the great weight of authority, and is reasonable and works no injustice on the employer. If, however, it were otherwise, serious consequences would befall the employee in many cases.

This case is clearly distinguishable from the case of *Sun Coal Co.* v. *Wilson,* reported in 147 Tenn., 118, 245 S. W., 547. The question involved in that case was whether or not the claimant was bound to submit to an operation for hernia, which had been produced by an injury sustained while in the employ of the coal company, and while in the course of his employment. The evidence in that case

showed that the only cure for hernia was a surgical operation, and that it was not a serious operation, nor was it attended with any serious danger or pain. It also appeared that such an operation could be successfully performed under a local anæsthetic, and that such an operation usually restores a person to his former earning capacity, and when handled by a skilled surgeon generally all such operations were successful. On these facts the court held that the employer was within its right in demanding that the claimant submit to the operation.

In the case at bar the evidence shows that an operation, such as petitioner insists defendant should undergo, is a serious one, and would produce much pain and suffering, and would involve an appreciable risk of life.

It results that the judgment of the circuit court will be affirmed, with costs.