## SOUTHERN SURETY CO. v. LACOSTE.
### (No. 8014.)

Court of Civil Appeals of Texas. San Antonio. May 16, 1928.

Rehearing Denied June 13, 1928.

**1. Master and servant ⏣385(5)—Employee suffering permanent disability to arm incapacitating him from doing manual labor held entitled to compensation for total incapacity (Workmen's Compensation Law [Rev. St. 1925, art. 8306, § 10]).**

Claimant employee who had not lost entire hand or arm, but which was so injured as to totally incapacitate him from manual labor such as he was doing and could only do, which condition was permanent, rendering him incapable of making a living, *held* entitled to compensation for full amount allowed by Rev. St. 1925, art. 8306, § 10, providing compensation for total incapacity.

**2. Master and servant ⏣417(5)—Whether workman injured in concrete mixer suffered permanent total incapacity from loss of use of arm held for jury (Workmen's Compensation Law, Rev. St. 1925, arts. 8306-8309, especially art. 8306, § 10).**

In proceedings under Workmen's Compensation Law, Rev. St. 1925, arts. 8306-8309, question whether workman who sustained injury when drawn into concrete mixer suffered permanent total incapacity from loss of use of arm entitling him to compensation, under article 8306, § 10, *held* for jury.

**3. Master and servant ⏣405(6)—Evidence sustained verdict that workman injured in concrete mixer suffered injury entitling him to compensation for permanent total incapacity (Workmen's Compensation Law, Rev. St. 1925, arts. 8306-8309, especially art. 8306, § 10).**

In proceedings under the Workmen's Compensation Law (Rev. St. 1925, arts. 8306-8309), evidence *held* to sustain verdict that workman drawn into concrete mixer, suffering injury to arm, sustained permanent injury totally incapacitating him from performing manual labor which was only thing he could do, entitling him to compensation, under article 8306, § 10, for total incapacity.

Appeal from District Court, Kleberg County; W. B. Hopkins, Judge.

Action by the Southern Surety Company against James F. Lacoste to review an award under the Workmen's Compensation Act, in which defendant filed a cross-action. From a judgment for defendant, plaintiff appeals. Affirmed.

Douglas, Carter & Black, of San Antonio, for appellant.

King & York, of Austin, and O. D. Johns, of Kingsville, for appellee.

COBBS, J. The appellee, James F. Lacoste, originally filed a claim for compensation under the Workmen's Compensation law,

before the Industrial Accident Board, for compensation for the injury received by appellee while in the employ of R. W. Briggs & Co.

The claim was appealed to the courts, and the appellant was cast in the action, and appellee, by the verdict of the jury, was declared to be totally and permanently incapacitated and he was given judgment for his compensation for 401 weeks, reduced to a lump sum.

Appellee pleaded fully his total and permanent incapacity. Appellant, Southern Surety Company, answered by general denial and special answer, admitting that Lacoste was employed as alleged, that he received certain injuries in the course of his employment, and that the Southern Surety Company carried the risk, but denied that Lacoste was "totally and permanently injured" as alleged, but his injury was a specific one to his right lower arm and wrist only. The appellant admitted that Lacoste was permanently incapacitated for 11 weeks and it paid said 11 weeks' compensation; that Lacoste had entirely recovered from all injuries, save and except the partial injury to his lower wrist and hand, to which extent it admitted liability. It also alleged that it had paid all necessary doctor bills and hospital bills, amounting to several hundred dollars. Appellant specifically denied that Lacoste was permanently incapacitated, as alleged by him, but he was only entitled to recover for a specific injury, for the loss of the use of his hand, 60 per cent. of the average weekly wage during 150 weeks, less the amount it had theretofore paid to him.

This case was submitted to the jury upon the following issues, which, with the answers thereto, are as follows:

"Special issue No. 1: Did said James F. Lacoste, plaintiff in cross-action, sustain personal injury on the 18th day of February, A. D. 1927? Answer: Yes.

"In answering the above question you will be governed by the following definition: The term 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body, and such diseases or infection as naturally result therefrom.

"Special issue No. 2: In the event that you have answered special issue No. 1, 'Yes,' that said James F. Lacoste sustained personal injury on the 18th day of February, A. D. 1927, then you will answer the following question: Did such injury result in the total incapacity of the plaintiff in cross-action, James F. Lacoste? Answer: Yes.

"In answering the above question you will be governed by the following definition: The phrase 'total incapacity' as used in the Workmen's Compensation Law, does not imply an absolute disability to perform any kind of labor. But a person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated.

⏣For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Special issue No. 3: Will the injury sustained by said James F. Lacoste, plaintiff in cross-action, be permanent? Answer: Yes.

"Special issue No. 4: Is this a case wherein, in your judgment, manifest hardship and injustice would result to the plaintiff in cross-action, James F. Lacoste, if the defendant in cross-action, Southern Surety Company, should ·fail to redeem its liability to the plaintiff in cross-action, James F. Lacoste, if any, by payment of such compensation, if any, as said James F. Lacoste may be entitled to receive, in a lump sum instead of weekly payments? Answer: Yes."

By comparing this charge with the case of Employers' Liability Assur. Corporation, Limited, v. Williams et al. (Tex. Civ. App.) 293 S. W. 210, where the facts are very similar, the charge would seem to present proper questions to the jury for their finding, and is therefore a proper charge.

Appellee was employed by R. W. Briggs & Co., Inc., which carried a policy of insurance with appellant under the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309), and on the 18th day of February, 1927, appellee sustained an injury by being dragged into a concrete mixer which he was operating for his employer. The injury which he sustained resulted in his total permanent incapacity to do or perform labor of any kind whatsoever, either in the line of his duties in the aforesaid employment or otherwise. His arm was so broken and damaged as to leave him afflicted with what is known as "wrist drop" so that it is entirely useless and cannot be used for any practical purpose. His nervous system was destroyed; he suffers continually from headaches and extreme nervousness, which injuries have deterred him from earning a livelihood at manual labor, and he was not qualified by education, training, or experience to earn money in any other vocation or calling, except that which had to do with manual labor.

Appellee testified that on the 18th day of February, 1927, he was operating a concrete mixer, and that he had been operating concrete mixers on and off all of his life ever since he had been out of school; that it was necessary to empty the concrete mixer every minute and a half when one was engaged in operating the mixer; that it was necessary to pull a big long lever down with the right hand, to empty it, using the left hand for a brace against the frame work, as it is very heavy, weighing 2,200 pounds; that the operator had to stand on his feet, and had to use both hands to pull the scoop up and let the cement and the gravel come down; that while so engaged he was accidentally drawn into this concrete mixer head first, inside of the machine; that it broke his arm, severed the main leader that operates his hand, and all the bones were completely crushed, receiving a wound in his head which left a five-inch scar; that his body was completely twisted around; that it took an hour and forty-five minutes to remove him from the machine.

After detailing his confinement in the hospital, etc., the appellee then testified that he had tried to get various jobs, but on account of his physical condition he could not handle any job, which required the use of both ·hands, as he had no use of one hand and arm, and that said hand and arm gave him constant pain, and that he had been refused every job for which he had applied, with the exception of a party who owns a filling station in Kingsville, who, through sympathy, had given him a temporary job at the filling station; that all he could do was to keep track of the gas and oil; that he had a Mexican boy to do all the manual labor, such as changing tires, fixing punctures, and greasing and washing cars, etc. He testified that he had no property of any kind or character, and that he had a wife and three small children, and that he had to get some kind of work to do. Appellee further testified that he was not able to perform any kind of manual labor, for which he had fitted himself in his past life; that he suffered from nervousness and continued headache.

Dr. H. Allison for appellee, testified:

"I know Mr. James F. Lacoste. I was called to treat him for injuries on the 18th day of February, 1927. He had received an injury in a concrete mixer, a broken arm, involving a fracture of the humerus, the big bone in the arm, and also a fracture in the wrist of both bones of the forearm, and also wounds on the face and scalp and about the body. I think the wound under the chin was the most important wound on the face; it was a rather deep, ragged wound, and on the scalp and the back part of the head, if I remember correctly, it was a scalp wound; it was torn and ragged. There was evidence that he had sustained a severe injury to the head by some machinery or blow of some kind. As to how deep the wound was under the chin, at this date I cannot describe it very accurately; it was a wound, I think, two or three inches long, and probably half an inch deep or so; might have been a little more than that at the deepest part of it. The big bone, the humerus, was broken above the elbow, about the middle of the bone, I think, about midway in the arm. He sustained Colles' compound fracture—that means that the skin was broken and the bone was exposed to the air—and a comminuted fracture of the wrist. The bones were broken at the wrist and the muscles and tendons were torn.

"The witness being asked to examine Mr. Lacoste's wrist and tell the jury the condition at this time, stated, 'Well, he has what we call "wrist drop"; that is, inability to raise the hand in that way, paralysis of the muscles, to raise up the same when it is extended in that way. Those muscles are paralyzed. I don't think the muscles were severed at the time of the injury, either the tendons here are caught in the scar, but more·probably the injury is the result of the nerve injury up in the arm, and the muscles are paralyzed. I attributed the paralysis of these muscles to the injury which he received. That is known as a "wrist drop."

A man suffering with a wrist drop hasn't any particular use of that hand; it is a serious disability. I think it is a permanent disability, unless that nerve is united and get good results. That will take another operation. I couldn't be sure that an operation would do any good. It wouldn't be a serious operation as far as risk of loss of his life or further loss of his arm is concerned, I don't think, but I do not know.' "

The nature and permanency of his injuries were testified to by the physician, as above set out, and others.

[1-3] Article 8306, § 10, Revised Civil Statutes 1925, provides:

"While the incapacity for work resulting from the injury is total, the association shall pay the injured employee a weekly compensation equal to sixty per cent. of his average weekly wages, but not more than $20.00 nor less than $7.00 and in no case shall the period covered by such compensation be greater than four hundred and one weeks from the date of the injury."

While the appellee has not lost his entire hand or arm, it has been so injured as to totally incapacitate him from work, such as he was doing or could only do. He has a condition of permanent disability, rendering him incapable of making a living. This is what the insurance was for, and therefore appellant is bound to respond for the full amount allowed by the statute. The issues of fact were properly submitted to the jury and their verdict, fully supported by the proof, was that appellee is permanently and totally disabled. Texas Employers' Insurance Association v. Moreno (Tex. Com. App.) 277 S. W. 84; Millers' Indemnity Underwriters v. Cahal (Tex. Civ. App.) 257 S. W. 957; Lumberman's Recip. Ass'n v. Anders et al. (Tex. Civ. App.) 292 S. W. 265; Employers' Liability Ass'n Corp., Limited, v. Williams et al. (Tex. Civ. App.) 293 S. W. 210; Dohman et al. v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 285 S. W. 848.

Clearly there is sufficient evidence of probative force to sustain the verdict of the jury. A very good test as to whether there is evidence sufficient to support the judgment of the jury, see the case of Brown v. City Service Co., 245 S. W. 658. In that case the Supreme Court quotes from the opinion of Chief Justice Brown in Wininger v. Railway (105 Tex. 56, 143 S. W. 1150) as follows:

"'If, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every ligitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff,' then there is evidence to support its verdict."

Without naming each assignment and discussing it separately in regard to the action of the court in each separate assignment, the court submitted every issue pleaded, fairly and in accordance with the pleadings and the evidence.

The appellant pleaded that the only injury received by appellee was a specific injury to the wrist and arm. The special issues Nos. 7 and 8 cover appellant's pleading to which no objection was made.

Upon the issues submitted to the jury the jury answered that appellee was totally and permanently incapacitated, rendering all other issues pertaining to his disability immaterial. The special issues requested therefore do not appear to be material.

The findings of the jury seem supported by the evidence, for the result of the injury has left appellee in a deplorable condition, from which he constantly suffers, with an arm and wrist which will never be of sufficient service to enable him to do manual labor or ever again to operate a concrete mixer or earn sufficient money to support himself and family.

We have passed upon every error pointed out and claimed as error and overrule the same.

The judgment is affirmed.