DuPont Rayon Company *v.* Thurman Bryant.*

(*Nashville,* December Term, 1929.)

Opinion filed March 1, 1930.

Tyne, Peebles, Henry & Tyne, for plaintiff in error.

W. H. Washington and W. B. Pendleton, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

This is a Workmen's Compensation suit. The only defense interposed was the refusal of the employee to submit to a surgical operation. The trial court found against the employer, and there is evidence to support his finding.

On April 8, 1928, Bryant, while operating a machine for the DuPont Rayon Company, had his left hand cut just below the thumb by a piece of glass. The company's physician and surgeon treated him for several weeks. Failing to recover the use of his thumb, and after the wound had completely healed, he consulted Dr. Sumpter on August 17, 1928, who discovered that the tendon, by which the last phalanx of the thumb is controlled, had been severed. Had a proper diagnosis been made at the time of the injury, the ends of the tendon could have been united by a simple surgical operation and the use of the thumb restored. Dr. Sumpter would not advise an operation, and testified as follows:

"Q. In the condition you found could an operation have been performed that would have remedied this condition with any certainty? A. At the time of the injury which he described to me, had the cut ends of the flexor longus pollicis, which is the tendon of the muscle directly concerned in the bending of the last phalanx

of the thumb, been sutured he should have regained a functional result that would have been satisfactory. After the wound had healed and time had elapsed the retracted proximal end of said tendon might be difficult to locate or to return to its original position from contraction or an atrophied state due to disuse. Any operation on the distal portion of the severed tendon by tendon transplanting would, in my opinion, be unsatisfactory.''

Two surgeons, introduced by the company, testified that, in their opinion, the operation could be performed successfully, but that the longer the operation was deferred the less chance there was for the action of the thumb to be restored and the greater the risk from infection. As we understand their testimony, the operation would require an incision several inches in length in the hand to find the ends of the tendon.

The petitioner reported Dr. Sumpter's diagnosis to the company. The latter then procured Dr. Eve to examine the thumb of petitioner, and he verified the diagnosis of Dr. Sumpter. It was after this that the company requested petitioner to submit to an operation.

■ The position of this court with respect to requiring an employee to submit to a surgical operation is fully stated in *Glotfelter Erection Co.* v. *Smith,* 156 Tenn., 268. We quote from that case as follows:

''In *Beech* v. *Keicher,* 154 Tenn., 332, it was said:

'' 'In these compensation cases great latitude, judgment and discretion is vested in the trial courts, and their decrees will only be reviewed upon questions of law. Where there is no evidence to support a finding the question then becomes one of law.' . . .

"The reasonableness of a refusal to submit to an operation is a question of fact. *Fred Cantrell Co.* v. *Goosie,* 148 Tenn., 282."

It is apparent from this record that the surgeon of the company was either negligent or inefficient, and as a result of this negligence the likelihood of a successful. operation had decreased and the danger therefrom increased. In these circumstances, the company is in no position to insist on an operation at this late date.

We find ample evidence to support the finding of the trial court that the thumb of the petitioner is permanently partially disabled seventy-five per cent.

The facts of this case do not. justify any change in the decree of the trial court, and it will be affirmed.