RUSSELL *v.* VIRGINIA BRIDGE & IRON CO.

*(Nashville,* December Term, 1937.)

Opinion filed Jan. 15, 1938.

EDGAR WEBSTER, of Memphis, for plaintiff in error.

WINCHESTER & BEARMAN, of Memphis, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This suit, instituted under the Workmen's Compensation Law, Code 1932, section 6851 et seq., presents two questions for our determination: First, was defendant justified in suspending disability payments because of petitioner's refusal to have his leg amputated five inches below the knee; and second, is petitioner entitled to recover compensation for total and permanent disability as a result of the injury which he received?

The petitioner, forty-five years of age, is uneducated and is a rivet welder. On April 30, 1936, while on duty at the plant of defendant, a helper negligently allowed a steel beam, weighing about 1,000 pounds, to drop on his right ankle and foot, badly crushing the bones thereof. These bones had to be reset, and stitches taken to draw together the flesh separated by numerous lacerations. He lost quantities of blood, and glucose had to be injected to save his life. He received a terrible nerv-

ous shock from which he has never recovered. He was in the hospital for several weeks; a brace being placed on his foot and leg at the time. Later, this was taken off and his foot and leg inclosed in a plaster of paris cast, and at the time of the trial, June 16, 1937, he could only move about by using crutches. Immediately after his injury the defendant's surgeon, in an effort to save his foot, drilled a hole through his heel bone, inserted a metal pin which was tied at both ends with a piece of wire to a strap fastened around his leg, thereby causing a continual pull on his heel bone. This was done to effect, if possible, a union of the several bones in the ankle. On both sides of this heel bone, near where these holes were made, and at several other places in the joints of the foot and ankle, an infection or bone disease called osteomyelitis has developed. The flesh will not heal and pus runs continually from the several openings in the flesh. Petitioner wears an iron brace that supports his instep and keeps his ankle straight. He is unable to put any appreciable weight on his right foot without experiencing great pain which extends all the way up to his hip. He does not sleep well at night, and cannot take a bath without help. When he is in bed he places a pillow between his legs; when he sits down or lies on his back it is necessary to elevate his foot; and he has not walked, even with crutches and the brace, over a block since he was injured. His foot and ankle are at all times swollen and the joints in them are stiff or ossified. Atrophy has developed in his right leg. He has taken an anæsthetic three times in connection with his injury, and undergone operations by the surgeons of defendant. These operations have not effected even a partial cure. About the 1st of March, 1937, defendant, being advised

by its surgeons that petitioner's ankle and foot could not be saved, demanded that petitioner have his leg amputated five inches below his knee. Petitioner consulted a physician who advised against the operation. Acting upon this advice, petitioner declined to have his leg severed. Defendant paid petitioner one-half of his weekly wage of $18.96 up to March 4, 1937, but declined to make further payments because petitioner would not submit to an operation.

The trial court found that defendant was justified in refusing to make further payments; his idea evidently being that petitioner was legally bound to accept the tendered operation. Since, however, the amputation of the leg would result in a loss of the foot, and upon testimony that the operation would greatly reduce the present total incapacity of petitioner, the court held that he was not totally disabled, contrary to the testimony of every witness, including defendant's physicians, and rendered a decree in favor of petitioner for the loss of a foot in the sum of $9.48 a week for 125 weeks.

Six physicians testified on the trial of this case, four of whom stated that petitioner would never be capacitated to work unless he had his leg amputated, while the other two opposed the operation at this time upon the theory that there was a chance to save the foot, although it would never be a good foot, and thereby partially restore his capacity to earn a living.

With respect to a compulsory surgical operation under the Workmen's Compensation Law, the annotator has collected and classified the cases in the following volumes of American Law Reports: 105 A. L. R., page 1470; 73 A. L. R., page 1303; 18 A. L. R., page 431; and

6 A. L. R., page 1260. From those cases the following rules, supported by the decided weight of authority, including our own decisions, are deducible:

1. That no man shall be compelled to submit to an operation involving an appreciable risk of life in order that the pecuniary obligation created by law in his favor against his employer may be minimized. *Fred Cantrell Co.* v. *Goosie,* 148 Tenn., 282, 255 S. W., 360.

2. That an injured workman will be denied compensation for incapacity which may be removed or modified by an operation tendered to him by the employer of a simple character not involving serious suffering or danger. *Sun Coal Co.* v. *Wilson,* 147 Tenn., 118, 245 S. W., 547.

3. Where the operation is of a major character and attended with serious risk to life or member, the injured employee's refusal to submit to such an operation is not unreasonable, and compensation should not be denied on that account. *Fred Cantrell Co.* v. *Goosie, supra.*

4. Where there is a difference of expert opinion as to whether an operation would be attended with serious risk of life or member, or as to the advisability and result of such operation, the injured employee is under no duty to submit to such an operation. *Kingsport Silk Mills* v. *Cox,* 161 Tenn., 470, 33 S. W. (2d), 90.

In *Glotfelter Erection Co.* v. *Smith,* 156 Tenn., 268, 269, 270, 300 S. W., 6, it was said:

"In *Sun Coal Co.* v. *Wilson,* 147 Tenn., 118, 245 S. W., 547, the court said:

" 'The evidence shows that a party so injured can never do efficient work, and that the injury will likely

become greater as time passes; that as a result of the injury the earning capacity of the claimant at present has been reduced one-third; that the only cure for hernia is a surgical operation; that it is not a serious operation attended with unusual danger or pain, and can be successfully performed under a local anæsthetic; that such an operation usually restores a man to his former earning capacity; that when handled by a skilled surgeon practically all such operations are successful; that the claimant is physically able to undergo the operation, and an, operation was recommended by the several phy-. sicians who examined him. . . .

" 'We do not wish to be understood as holding that, under all circumstances, a claimant should submit to an operation when so requested by the employer, but we have not a case here where the operation is serious or dangerous, or where the physicians disagree as to the advisability of an operation.'

"In *Crane Enamelware Co.* v. *Dotson,* 152 Tenn. [401], 405, 277 S. W. [902], 903, it was said:

" 'When the conditions are such as those appearing in *Sun Coal Co.* v. *Wilson,* 147 Tenn., 118, 245 S. W., 547, the employee would have to submit to an operation. That is to say, where it appears that an operation is necessary, that he is in condition to undergo same, that it would in all probability be successful, and the com-. pany tenders it to him, and offers to defray all expenses, he would have to submit. The court would be very loath to further extend the rule announced in that case.' "

The authorities are in conflict as to a compulsory operation for hernia under favorable conditions; the weight of authority supporting the rule which this court adopt-

ed in *Sun Coal Co.* v. *Wilson,* some courts considering such an operation of a minor nature while other courts classify it as a major operation.

There is no specific provision in our statute for a major surgical operation, such as the amputation of a leg, and the court is loath to read such a provision into the statute. Counsel have referred us to no decision holding such an operation compulsory, and we have been unable to find any authority supporting that contention. We are of the opinion, therefore, that the trial court was in error in holding that the defendant was justified in suspending payments of compensation because petitioner declined to have his leg amputated.

We are also of the opinion that the trial court was in error in holding that petitioner's injury did not result in total and permanent disability. The uncontradicted proof is to the contrary.

In *Kingsport Silk Mills* v. *Cox,* 161 Tenn., 470, 475, 476, 33 S. W. (2d), 90, 92, it was said:

"The evidence shows that the only injury the petitioner received was to her left hip and that no other part of her body received any physical injury. The physician testified that the X-rays show that she received a fracture of the neck of the femur or left leg.

"Counsel for the employer insist that the compensation should be limited to that provided for the loss of a leg, viz., 50 per centum of the average weekly wages during one hundred and seventy-five weeks.

"We agree with the chancellor, however, who held that since the petitioner was permanently and totally disabled her case was governed by subsection (e) of section 28 of the act, which provides:

"'The total and permanent loss of the sight of both eyes, or the loss of both arms at the shoulder, or com-

plete and permanent paralysis, or total and permanent loss of mental faculties, or any other injury which totally incapacitates the employee from working at an occupation which brings him an income, shall constitute total disability.'

"Ordinarily the loss of a leg does not result in permanent total disability, but occasionally it does, just as it did in this case; and in these exceptional cases it is just and proper that the employee receive the same compensation as one who is permanently and totally disabled in some other way. This construction harmonizes the two provisions and accords with what we interpret the legislative intent to be."

In *Central Surety & Ins. Corp.* v. *Court,* 162 Tenn., 477, 481, 36 S. W. (2d), 907, 908, it was said:

"Petitioner's right hip was fractured by the fall. The ball in the hip joint was wrenched from the socket. The leg, which was rendered useless, remains as a member to the hinderance of the body and impairs the use of the entire body, with the result, as found by the trial judge, that petitioner is totally incapacitated to work at an occupation which would bring an income. In such case compensation is controlled by sections 28(d) and 28(e) of the Compensation Act as amended (Pub. Acts 1927, chapter 40, section 1). See *Kingsport Silk Mills* v. *Cox,* 161 Tenn., 470, 33 S. W. (2d), 90."

In the instant case, the inability of petitioner to work at an occupation that will bring him an income is just as great as was that of the claimants in the cases just quoted from. The trial court, in his findings of fact, says:

"The employee had willingly undergone several operations upon the injured foot and ankle at the hands of

different physicians selected by the defendant prior to March 4, 1937, but in spite of all these efforts Russell's foot is still draining, causing him much pain and is at present totally useless as a weight bearing member of his body.''

■■ The section of the act heretofore quoted, Code 1932, section 6878(e), clearly provides: ''Or any other injury which totally incapacitates the employee from working at an occupation which brings him an income, shall constitute total disability.'' This provision of the act contains no exception, and we do not feel justified in reading one into it. Neither does it conflict with the preceding provisions relative to compensation for the loss of a particular member, as we attempted to point out in *Kingsport Silk Mills* v. *Cox, supra.* The distinction is well stated in *Texas Employers' Ins. Ass'n.* v. *Ray, Tex. Civ. App.,* 68 S. W. (2d), 290, 293, from which we quote as follows:

''In *Standard Accident Insurance Co* v. *Williams* (Tex. Com. App.), 14 S. W. (2d), 1015, 1016, which was a suit to recover compensation under the Workmen's Compensation Law [Vernon's Ann. Civ. St., article 8306 *et seq.*], the employee was awarded compensation for total incapacity under the statutes. The employee, who was a painter, had sustained a fracture of one arm. In that case the insurance company contended that the compensation should be confined to the loss of that member under section 12 of article 8306, above cited. We quote the following from the opinion of the Commission of Appeals in that case:

'' 'If the injury does not extend beyond the member, the loss is definitely and arbitrarily fixed so as not to exceed the complete loss of that member under the stat-

utory scheme of compensation. But we take the rule to be, if an injury to a specific member does not stop with the injury to or loss of that member, but for any reason continues as an injury affecting the body to such extent as to result in permanent or partial total disability, a recovery may be had therefor, even exceeding the statutory compensation for the complete loss of that member. In such a case, the injury is general and not confined to the specific member.'

"In *Southern Surety Co.* v. *Lacoste* (Tex. Civ. App.), 7 S. W. (2d), 197, 199, an employee was allowed compensation for total incapacity fixed by the statute resulting from an injury to his right arm. In answer to the contention that compensation should be restricted to the loss of the use of that arm, the Court of Civil Appeals had this to say:

" 'While the appellee has not lost his entire hand or arm, it has been so injured as to totally incapacitate him from work, such as he was doing or could only do. He has a condition of permanent disability, rendering him incapable of making a living. This is what the insurance was for, and therefore appellant is bound to respond for the full amount allowed by the statute.'

"A writ of error prosecuted from that decision was refused by the Supreme Court."

The Supreme Court of Michigan, in *Bruce* v. *Taylor & Maliskey,* 192 Mich., 34, 158 N. W., 153, affirmed an award for total incapacity for the breaking of an ankle.

The trial court, as we interpret his opinion, based his decision upon a misinterpretation of the holding of this court in *Catlett* v. *Chattanooga Handle Co.,* 165 Tenn., 343, 55 S. W. (2d), 257, 258. In that case the injury affected only the eye. The court was careful to point

out that "petitioner's permanent total disability was not the result of an injury." He had lost his other eye when a child through disease, and by combining the two losses petitioner insisted that he had been rendered totally incapacitated. The court held that this could not be done, saying: "The last phrase 'total disability' relates to its antecedent phrase 'any other injury,' and makes the total disability to be compensated for dependent upon injury." In the instant case the trial court did not and could not find under the evidence that petitioner had capacity to engage in an occupation that would bring him an income. In this case, as well as in the Court and Cox Cases, the employee's total disability was the result of an injury, and this injury is not limited to the foot, but extends to the entire body to such an extent as to render petitioner totally incapacitated.

█ It is not uncommon to see a man without a hand or a foot who is very active and capable of engaging in a gainful occupation. Such a person was not rendered totally incapacitated by the loss of his hand or foot, and it was to this class that remuneration for the specific loss of a member was intended to apply. On the other hand, where an employee, as the result of an injury, is disabled to the extent that he cannot work at an occupation which will bring him an income, he is entitled to the compensation provided therefor; and it is immaterial whether his condition resulted from an injury primarily to his arm, hand, leg, foot, head, or some other member of his body.

We hold, therefore, that petitioner is entitled to a decree for total permanent disability in the sum of $9.48 per week for 400 weeks, and $5 per week for the suc-

ceeding 150 weeks; the decree to be credited by the payments heretofore made. Should it develop in the future that petitioner's disability is neither total nor permanent, the decree can be modified accordingly, as provided by section 6892 of the Code. The costs will be paid by the defendant.