M. B. McMahan Lumber Co. *v.* Ownby.

(*Knoxville,* September Term, 1949.)

(May Session, 1950.)

Opinion filed July 15, 1950.

E. Bruce Foster, (Frantz, McConnell & Seymour, of counsel), of Knoxville, for plaintiff in error.

R. L. Ogle, of Sevierville, for defendant in error.

Mr. Justice Burnett delivered the opinion of the Court.

This is a Workmen's Compensation suit. Three questions are raised, namely:

"1. Whether or not an employee suffering an injury to a foot and ankle, which is not totally disabling, is confined to a recovery for injury to a specific member or can he recover for permanent partial disability to his body as a whole?

"2. Whether or not refusal to wear a foot brace which is tendered to him by his employer's doctor, who states that the brace will remedy his condition, bars a recovery under the Workmen's Compensation Act by an employee?

"3. Whether or not the trial court erred in overruling a motion for written findings of fact?"

The trial judge, in his judgment awarding compensation, found that the appellee worked for the appellant "logging with horses"; that "he caught his foot and ankle between a log and a stump or some other object and his ankle was twisted and sprained by stretching and tearing the ligaments holding the joints together as set out in the original petition. This injury left petitioner's foot and ankle tender with inability to bear the entire weight on his left foot. When he exercises said foot, it becomes swollen and hurts him at night. He has tried to do farm work and is unable to do this kind of work. He has been hiring his plowing done on the farm."

"Petitioner is an uneducated man and has no profession except common labor and his profession has been that of a lumberman practically all his life. He is now unable to carry on in this occupation."

After this finding the trial judge further said: "Under the facts and authority petitioner's disability is not limited to a partial loss of the foot. As a result of said injuries the court finds petitioner has a permanent, partial disability to the extent of 83-1/3%; that the weekly wage of petitioner, Lawrence Ownby, prior to his injury was $18.00 per week;"

The record shows that as a result of this injury this employee was unable to do any manual labor but that he

did, subsequent to the injury, help his wife around a little store which they had and by agreement his wages, for the question of fixing his payments prior to the institution of this suit, were $3 per week. Two of the doctors on behalf of the employee testified, that insofar as the injury was concerned, he was totally disabled from doing logging or any heavy manual labor. The doctors for the employee and the employer though, fixed the disability to the foot alone as disabled at from 25 to 50 percent. The doctor, who was a recognized specialist on the subject, for the employer fixed disability as to the foot at 25 percent.

There is no proof in the record as to whether or not the employee has been offered any light work since this accident or that he had attempted to get any light work or other work of a similar nature other than helping his wife in their store at the agreed compensation of $3 per week.

The physician for the employer had made a specially built brace for this foot and ankle, and recommended that the employee wear it; it was the feeling of this doctor that if this brace was worn a sufficient length of time that the employee could work and the foot and ankle would then heal up. Apparently the employee was pained so by trying to wear this brace that he did not wear it. There is little debate on this question in the lower court, only the evidence by the doctor as above referred to, and there is nothing for us to go on herein as to whether or not the employee was justified in not wearing this brace and attempting to heal this injury. Certainly proof is required on the subject before we can be in a position to say whether or not the employee was

justified in not wearing it, and, whether or not by wearing it the injury might be healed.

As to whether or not such a brace is compulsory and should be worn by the employee, in an attempt to cure this injury, is a related question to a compulsory surgical operation and should be treated and classified under the provisions of the Act applicable thereto. A very able discussion of the matter, as to when compulsory operations should be applied is found in the case of *Russell* v. *Virginia Bridge & Iron Co.*, 172 Tenn. 268, beginning at page 272, 111 S. W. (2d) 1027. The court there quotes from many cases on the subject to which we refer counsel for further information.

■■ The trial judge made no written finding of fact herein, other than that outlined in the decree above referred to, for our information and guidance in determining this case. It is indeed very helpful, especially in view of the fact that we are bound by the finding of fact of the trial judge, on the factual situation, when there is any material evidence to support these findings of fact. In view of this situation, it seems to us that the trial judge should at least give a limited finding of fact so we can definitely conclude on what basis he fixed compensation below. Of course, it is not necessary that he specifically point out the section of the Act and subdivision thereof from which he bases his conclusion because we can determine this by the result of the conclusion. Clearly, it would be more helpful if this were done.

It is perfectly obvious from reading this record and the judgment of the trial court that it was the purpose of the trial court, in fixing the compensation, that he based the compensation on loss of earning capacity and not on the basis of statutory liability for the loss of one

of the members. The basis for such a holding is that the disability found by the trial judge is total. When the disability is thus found to be total as a result of an injury to one of the specified members then sub-section (e) of Code Section 6878 is the applicable section under which disability is fixed. This is the basis upon which compensation has been fixed on the loss of earning capacity rather than on the loss of a member in our cases of *Hix* v. *Cassetty,* 186 Tenn. 343, 210 S. W. (2d) 481; *Plumlee* v. *Maryland Casualty Co.,* 184 Tenn. 497, 201 S. W. (2d) 664, and *Johnson* v. *Anderson,* 188 Tenn. 194, 217 S. W. (2d) 939, and older cases cited in these cases, particularly the case of *Russell* v. *Virginia Bridge & Iron Co.,* supra.

When the disability suffered by reason of injury to one of the specified members is permanent partial disability then sub-section (e) of the Act above referred to is not applicable. The section of the Act applicable under permanent partial disability to one of the specified members is subdivision (c), which under Chapter 139, Section 6 of the Public Acts of 1947 (the applicable act here because the accident happened in September, 1947, and the act went into effect in March of that year) provides that:

"(c) Permanent partial disability.—In case of disability partial in character, but adjudged to be permanent, there shall be paid to the injured employee, in addition to the benefits provided by Section 6875, and in lieu of all other compensation: (1) 60% of his average weekly wages for the healing period, which is defined as that period for healing of the injury immediately following the accident, not exceeding eight (8) weeks, subject to the same limitation as to minimum and maximum as provided in subsection (a) of this section, and

(2) 60% of the average weekly wages, beginning at the end of the healing period in accordance with the following schedule:''

Then follows a long list of specific injuries, such as the loss of the thumb, finger, toe, arms, legs, eyes, etc. These specific injuries deal with the total loss of some member of the body. The particular clause of the section of the Act dealing with cases of permanent partial disability due to an injury to a member resulting in less than total loss follows the enumeration just stated and is the one controlling in this case if the employee is only permanently partially disabled. If he is only permanently partially disabled the provision of the Code then would be ''for the loss of a foot, sixty per centum of average weekly wages during one hundred and twenty-five weeks.'' He would then be entitled to eighty three and one third per cent of 125 weeks, which is the term specified for total loss of the use of the foot plus the healing period based on $18 per week, earning capacity. See *Casey-Hedges* v. *Lynch,* 147 Tenn. 173, 245 S. W. 522.

The judgment of the trial court, after that above quoted, attempts to fix compensation under the last paragraph of subdivision (c), of Code Section 6878, which reads:

''In all other cases of permanent partial disability not above enumerated the compensation shall be sixty per centum of the difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition subject to a maximum of sixteen dollars per week. Compensation shall continue during disability, not, however, beyond three hundred weeks.''

This provision applies to permanent partial injuries to parts of the body not specifically enumerated immediately preceeding.

 This was an erroneous application of this provision of the Act. See *Casey-Hedges Co.* v. *Lynch,* 147 Tenn. 173, 245 S. W. 522, where the trial judge did exactly as is done herein and this Court reversed properly supplying the proper section of the Act to the injuries as found in that case. If we were satisfied with this record, and the judgment herein, that it was the purpose of the trial judge to find that the employee was merely permanently partially disabled to the extent that was indicated in the judgment there is nothing that we could do except to follow the *Casey-Hedges* case, last above referred to. We could paraphrase it in every particular—apply the facts of the instant case to that of the *Casey-Hedges* case.

The trial judge unquestionably misconstrued the authorities, herein above referred to, wherein compensation is based on the loss of earning capacity rather than the loss of any member; and he also misapplied the application of the Act, if it was his purpose to determine that the employee was permanently partially disabled. Then too, the facts are not developed as they should be and the trial judge was not given an opportunity to pass on the question as to whether or not the brace made for the employee's foot should be worn by him and would effect a cure. This should be developed more at length and the trial judge given an opportunity to pass on the question.

It is perfectly obvious to us that the trial judge concluded that as far as this laborer was concerned that this injury had produced total disability—two doctors

so testify—that insofar as his ability to do manual labor was concerned, and under the facts here adduced and as found by the trial judge, this was the only qualification that the employee had—to do manual labor. The trial judge apparently in arriving at his percentage of permanent partial disability was led into the erroneous conclusion that the man injured was permanently partially disabled by taking 100 per cent, that is, his ability to earn which was $18 per week and then deducting the agreed amount that he got working around his wife's store of $3 per week and relating one to the other. We take the man's earning capacity as $18 per week as shown herein as 100 per cent and then take the amount that he earned in his disabled conditon at the store of $3 per week, it is perfectly obvious that the $3 per week is 16 and ⅔ per cent of 100, deduct then the 16 and ⅔ per cent from 100 and it leaves 83 and ⅓ per cent. Thus it is obvious that the trial judge took this small earning capacity of the employee, subsequent to his injury, and on this basis made the statement that he was permanently partially disabled.

 In view of this evident misapplication of the law to the facts and the further fact that these questions should be further developed and that the trial judge should give the appellant a more definite finding by a written finding of fact of the basis of his conclusions, we feel constrained to reverse and remand this case for further proof and finding of fact consistent with this opinion.

The costs of appeal must be adjudged against the appellee while the cost below will await the result there.

All concur.