JESSIE J. EDWARDS

*v.*

TRAVELERS INSURANCE COMPANY et al.

*(Knoxville,* September Term, 1956.)

Opinion filed June 7, 1957.

Rehearing Denied July 29, 1957.

H. KEITH HARBER, Chattanooga, for plaintiff in error.

CAMPBELL & CAMPBELL, Chattanooga, for defendants in error.

Mr. Justice Tomlinson delivered the opinion of the Court.

During the course of his employment, and arising out of it, Edwards received a ruptured intervertebral disc. Despite several months of conservative treatment by three specialists in the treatment and cure of such an injury, his disability has continued to be total, and, in the absence of surgery, will, in the opinion of these doctors, so remain. They are unanimous in recommending that he undergo surgery called by them a "laminectomy". The testimony of each, based on experience, is that the operation will probably result in a reduction of his condition to a 15% to 20% permanent partial disability. They testify that the danger of detrimental results is quite remote and contrary to the experience of practically all of the hundreds upon whom these specialists have done this laminectomy. Following the operation, two-thirds of the patients are able "to return to their usual duty" and "the remaining third return to at least light duty", according to these doctors.

Travelers Insurance Company, the carrier of employer's insurance, made formal request in Court for Edwards to undergo this surgery. He refused, and based his refusal upon (1) what he considered to be an unfavorable experience in two minor operations when a child, and (2) his great fear, found by the Trial Court to be sincere, as to the results of the requested operation. He, a man thirty-four years old, is otherwise in good physical condition for this operation.

Based upon the foregoing evidence and formal request of the insurance carrier, the order of the Trial Judge is that Edwards submit to this surgery "or the Court will disallow further compensation from the date of the last payment". This order directed the insurance carrier to pay the cost of the operation subject to the statutory maximum, and retained the cause in Court "to determine the residuary disability, both temporary total and permanent partial". Edwards has appealed in error.

The foregoing judgment of the Trial Court is based upon that portion of Section 50-1004, T.C.A. reading as follows:

"If the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services which the employer is required to furnish under the provisions of this law, his right to compensation shall be suspended and no compensation shall be due and payable while he continues such refusal."

It is said by the defendant-in-error that (1) when there is any material evidence to support the Trial Judge's finding under the foregoing code section that the em-

ployee's refusal to submit to the operation is unreasonable, then this Court must affirm the judgment of the Trial Court, and (2) that there is such substantial evidence (the testimony of the doctors) to support the Trial Judge's finding.

The foregoing insistence of the Insurance Company presupposes that the surgery in question is one which comes within the contemplation of the foregoing statutory provision under which the Trial Court acted in suspending payments. It behooves the Court, therefore, to first decide that question.

One or the other of the doctors testified with reference to the surgery in question, and without contradiction, as follows:

"In order to expose the disc, of course, you have to remove the, divide the muscles in the back and remove a portion of the bone from the posterior processes of the spine to expose the disc itself, at which time you are working right around a nerve root as they come from the spinal cord and dura."

\* \* \* \* \* \*

"——it's a major operation and any major operation where you have to keep the patient on his face for an hour, hour and a half, has some possibility of having complications \* \* \*"

\* \* \* \* \* \*

"That nerve root could very readily be damaged, not only by trauma due to pulling it over to one side with instruments, if one isn't careful it could even be severed with the scalpel.

"Q. If severed, what would be the result? A. If severed, one would expect paralysis of the area supplied by that particular nerve root."

\* \* \* \* \* \*

"Technical error during the surgery, at which time a nerve root would be cut or nerve roots damaged in some way. That would be the second complication. All dangers that come about as the result of anesthesia would have to be considered, such as occasional anesthetic death, so-called or complications from anesthesia like pneumonia or atelectosis or some lung pathology. All of the post operative operations that one is apt to run into following any major operation such as embolism or pneumonia or atelectosis or something of that sort. Kidney and bladder complications, bowel complications, all of those things must be considered in this type of case."

All these surgeons testified that this operation is a "major" one. In view of the above quoted testimony it would be quite unrealistic to otherwise classify such surgery.

In *Fred Cantrell Company v. Goosie,* 148 Tenn. 282, 255 S.W. 360, 363, the operation necessary to correct the patient's condition was an incision of the leg for eight or nine inches to the bone and wiring the ends of the bones together and placing the leg in a splint. According to the doctors this was regarded as a "major operation". The Court, in holding that the employee was within his legal rights in refusing to submit to the operation, said, with reference to the code section involved here, this:

"We think a reasonable construction should be given to our statute. We do not think it should be required that the injured employee should submit to a serious operation involving an appreciable risk of life in order that the pecuniary obligation created by law in his favor against his employer may be minimized. This rule appears to be supported by the great weight of authority, and is reasonable and works no injustice on the employer. If, however, it were otherwise, serious consequences would befall the employee in many cases."

In *Russell v. Virginia Bridge & Iron Co.*, 172 Tenn. 268, 275, 111 S.W.2d 1027, 1029, this Court held:

"There is no specific provision in our statute for a major surgical operation, such as the amputation of a leg, and the court is loath to read such a provision into the statute. Counsel have referred us to no decision holding such an operation compulsory, and we have been unable to find any authority supporting that contention. We are of the opinion, therefore, that the trial court was in error in holding that the defendant was justified in suspending payments of compensation because petitioner declined to have his leg amputated."

Unless the two foregoing holdings are to be overruled, this Court will be compelled to include that the Trial Judge was not authorized to suspend workmen's compensation payments otherwise due Edwards because of his refusal to submit to this operation defined by all the doctors as a major one. The chances are that these two decisions were overlooked.

■■ The first of the two decisions mentioned was in 1923; the second in 1938. It is significant that the Legislature, although it has in the many intervening years amended the workmen's compensation act in numerous respects, it has not enacted legislation changing or modifying the statute as construed in the two foregoing decisions on the issue involved here. While the Court should not let its decision rest upon the fact, it is, we think, confirmatory of the Court's conclusion that it is not intended by the workmen's compensation statute to require an injured workman to submit to a major operation in order to avoid the suspension of payments otherwise due him for injuries compensable under the Act.

The Court has found no decisions in this jurisdiction on the question of whether the payment of compensation otherwise due an injured workman may be suspended by reason of his refusal to undergo surgery for a ruptured intervertebral disc. It has found only three such decisions in other jurisdictions. One of these, *Mancini v. Superior Court,* 77 R.I. 262, 75 A.2d 300, disposes of the appeal without deciding the question.

The Oklahoma case of *K. Lee Williams Theatres v. Mickle,* 205 P.2d 513, 516, 517, decided in 1949, did have the exact question before it under a statute, 85 O.S. 1941 sec. 21 the wording of which was in effect the same as our section 50-1004, hereinbefore quoted. The Oklahoma Court said this:

"* * * claimant's injury was that of a ruptured or fractured intervertebral disc; that his disability is permanent unless relieved by a surgical operation; that the operation indicated is a major operation, suc-

cessful to the extent of from 85 to 90 per cent with about one per cent resulting in death.

\* \* \* \* \* \*

"Petitioners cite no case and we have found none holding that a claimant's refusal to submit to an operation of the nature of the one herein involved, and under the circumstances of this case, justifies the employer and its insurance carrier in discontinuing payment of compensation or calls for an order or award allowing such discontinuance.

\* \* \* \* \* \*

"Petitioners' principal medical witness \* \* \* testified that he did not think claimant 'needed surgery yet' and that claimant was too jittery and afraid, and because of his mental attitude toward an operation witness would not urge it. In fact, he would refuse to perform the operation while claimant remained in that nervous and jittery condition and held the mental attitude toward the operation that he did at the time he examined the claimant.

\* \* \* \* \* \*

" 'Equally true is the rule \* \* \* holding that the Industrial Commission has no authority to compel an employee to submit to a major operation where there is a risk of life involved in the "slightest degree" ' \* \* \* 'merely in order that the pecuniary obligations created by the law in his favor against his employer may be minimized.' "

In the Kentucky case of *United States Coal and Coke Company v. Lloyd,* decided in 1947, and reported in 305 Ky. 106, 203 S.W.2d 47, 49, the Court said:

"We do not think error was committed in the failure to require Lloyd to submit to a corrective operation. Dr. Jelsma, a highly competent physician of Louisville, who testified for the company, said Lloyd had a herniated disc and that he was unable to perform manual labor. He said, however, that it could be corrected, but the operation would be a major one and more serious than an operation for a hernia. We know of no case where an employee has been required to undergo a major operation in an effort to correct an injury. Furtherfore * * * what is reasonable under the circumstances is not to be tested by the opinion expressed by any single doctor, no matter how eminent he may be."

This Court concludes that the Trial Court made a mistake in suspending the payments otherwise due Edwards because he refused to submit to this operation. Accordingly, its judgment will be reversed. The application of the defendant-in-error for a suspension of compensation payments pending the refusal of Edwards to submit to the surgery requested will be denied. The costs of the appeal will be adjudged against defendant-in-error. The cause will be remanded for further proceedings in accordance herewith.