LEWIS TATUM d/b/a TATUM SHOE COMPANY,
Plaintiff in Error,

*v.*

LILLIAN PALMER, Defendant in Error.

(*Nashville,* December Term, 1959.)

Opinion filed October 7, 1960.

McDONALD, KUHN, McDONALD, CRENSHAW & SMITH, Memphis, HENRY T. V. MILLER, Memphis, of counsel, for plaintiff in error.

WALTER BUFORD, Memphis, for defendant in error.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is a workmen's compensation case. The only question raised by the one assignment of error on appeal is whether or not the trial judge was in error in holding that the injured employee, Mrs. Palmer, did not unreasonably refuse a request for a further examination consisting of a myelogram.

T.C.A. sec. 50-1004 provides in part as follows:

"The injured employee must submit himself to the examination by the employer's physician at all reasonable times if requested to do so by the employer * * *. If the injured employee refuses to comply with any reasonable request for examination or to accept the medical or specialized medical services which the employer is required to furnish under the provisions of this law, his right to compensation shall be suspended and no compensation shall be due and payable while he continues such refusal."

The evidence briefly is as follows: The employer did not deny that the claimant suffered an injury to her back on December 27, 1958, when she fell from a ladder during the course of her employment and injured her lower back. She was examined first by her family physician, Dr. McQuiston, and on January 17, 1959, she was examined by Dr. Basist, an orthopedic surgeon. He gave her the usual subjective tests and diagnosed her trouble as a ruptured disc. His opinion is that she needs a myelogram for proper diagnosis, but he is reasonably sure without it that she has a ruptured disc. His opinion is that a myelogram is about 80% accurate. He stated that neither the claimant nor her husband would agree to have a myelogram or to having anything done to her spine, because of the unfavorable experience of a relative of hers in that regard; accordingly he administered the usual conservative treatment consisting of traction and a canvas support around the waist, etc. He testified that a myelogram involved some discomfort which varies from patient to patient and from an intermediate amount of discomfort to a severe amount, and that it cannot be predicted which ones will suffer which. It is his opinion that the possibility of an accident in this diagnostic operation exists but is small.

We think it unnecessary to include a description of a myelogram as it has been described in so many opinions of this and other courts heretofore.

The claimant was examined by Dr. Nicholas Gotten, a neuro-surgeon on January 15, 1959. He did not say and does not know whether she had a ruptured disc, because ''she does not have many of the classical signs of it''. It is his opinion that a myelogram is not a serious test, i.e.,

not debilitating, not particularly painful and that there should be no controversy about having such a test. It is his opinion that it is the only objective test for a ruptured disc. His opinion is that it is 90% accurate. The patient came to him from Dr. McQuiston.

Dr. James W. Mitchell, a neuro-surgeon, examined her approximately 11 months after the accident. His diagnosis was a ruptured disc. His opinion is that a myelogram is not a "must".

The claimant is a highly nervous person and she and her husband testified definitely that they were unwilling for her to undergo a myelogram or any operation whatever of any kind on her spine.

Accordingly from the foregoing, it is apparent that there is substantial evidence to support the finding of the trial judge. There is another reason, however, why the judgment below should remain undisturbed.

It is that such a myelogram is really unnecessary for the following reasons. This Court held in *Edwards v. Travelers Ins. Co.,* 202 Tenn. 364, 304 S.W.2d 489, that a laminectomy for a ruptured intervertebral disc is a major operation and the refusal of a claimant to undergo the same is no ground for suspension of payments of compensation due. The claimant has stated positively that she will not undergo any operation of that sort. Therefore, it would seem bootless to do a myelogram because if it shows a ruptured disc, the claimant would not have to submit to a corrective operation, and if it fails to show a ruptured disc, the physicians would be confronted with the alternative ideas that either the test was not accurate

or that it was accurate and that something else is causing the trouble.

In 100 C.J.S. Workmen's Compensation sec. 484, p. 424, note 16, is cited a Nebraska case, *United States Fidelity & Guaranty Co. v. Wickline,* 103 Neb. 21, 170 N.W. 193, 6 A.L.R. 1267, in which it was held that since the proof showed that neither an x-ray examination nor an x-ray photograph was necessary, it was not unreasonable for the patient to refuse to submit to the same.

Accordingly the judgment below is affirmed.